## COTTEN *v.* FIDELITY & CASUALTY CO.

*(Circuit Court, S. D. Mississippi, W. D.   January 17, 1890.)*

1. INSURANCE—ACCIDENT POLICY—RAILWAY EMPLOYES.
    An accident policy contained the following condition: "This insurance does not cover entering, or trying to enter or leave, a moving conveyance using steam as a motive power; * * * railroad employes excepted." Assured was baggage checker of a transfer company. His business required him to meet and board incoming trains, and check baggage to other railroad lines, and to residences in Vicksburg. *Held*, assured was a railroad employe, within the meaning of the foregoing exception.

2. SAME—VOLUNTARY EXPOSURE.
    Whether such an agent is guilty of "voluntary exposure to unnecessary danger," in attempting to board a moving train, is a question of fact for the jury.

3. SAME—APPLICATION—WARRANTY—BODILY INFIRMITY.
    The application for an accident policy contained a warranty that the applicant was not possessed of, nor subject to, any bodily infirmity. The evidence showed that assured was near-sighted. *Held*, not a bodily infirmity, within the meaning of the warranty.

4. SAME—CONDITIONS—CONSTRUCTIONS.
    The conditions of an insurance policy, providing for forfeitures of the same, are to be construed strictly against the company, and liberally in favor of the assured. The burden of proof is on the company to establish the breach of the conditions relied on for such forfeiture.

5. SAME—NON-PAYMENT OF PREMIUM—ESTOPPEL.
    The policy of insurance contained a stipulation that "all claims for injuries effected during any period for which its respective premium has not been actually paid shall be forfeited to the company." Assured gave an order on his employer for the premium when the policy was issued, payable in four installments, which was accepted by the agent, and forwarded to the company. The company failed to

present the order for payment prior to the death of assured, although several months intervened. *Held*, the company is estopped to set up the non-payment of the premium.

**6.** SAME—WAIVER OF DEFENSES.

After the death of the assured, and with knowledge of facts which might have been pleaded by the company in avoidance of the policy, the agent of the company who issued the policy demanded and received from the beneficiary in the policy the unpaid premium. *Held* a waiver of such defenses.

**7.** SAME—PLEADING—AMENDMENT.

Amended pleas may be filed at any time before verdict, to bring the merits of the controversy between the parties fairly to trial; but where the facts set up in such pleas were known, or ought to have been known, to defendant, leave will not be granted to file them after all the evidence has been introduced by both sides.

At Law. Action on insurance policy.
*Dabney, McCabe & Anderson*, for plaintiff.
*Miller, Smith & Hirsh*, for defendant.

HILL, J. This is an action brought by the plaintiff, Mrs. Theresa Cotten, against the defendant corporation, to recover the sum of $3,000, with interest, alleged to be due upon an accident insurance policy, issued to William M. Cotten, the son of the plaintiff, for her benefit in case of his death from accidental causes.

The questions now for decision arise: (1) Upon defendant's motion for leave to file two additional pleas to plaintiff's declaration; (2) upon defendant's motion for a peremptory instruction to the jury to return a verdict for it; and (3) on the plaintiff's motion for a peremptory instruction to the jury to return a verdict for her. These several motions are made at the conclusion of the evidence on both sides, and will be considered in the order stated, after a statement of the facts established beyond dispute, which are as follows:

Cotten, to whom the policy was issued, was a young man about 32 years of age, of rather small stature, was inclined to be near-sighted, and usually wore glasses to aid his vision, but could see without them, and had been engaged for some 12 years on the Vicksburg & Meridian Railway, as a seller of books, newspapers, etc., usually sold by such persons, as baggage-master, and for some time before, and at the time the policy was issued to him, as transfer agent on the railroad; his business mainly being to meet the passenger trains at Jackson, or between Vicksburg and Jackson, and take up the checks of the baggage designed for other lines of transportation and destination, and place thereon the checks of the transfer company in whose employment he was, and which transfer company was employed by the railroad company to perform that service, which service was necessary to be done for the railroad in conducting its business. Getting on moving trains was shown to have been an incident of his business. Cotten was on the railroad, and engaged in this business, when the contract of insurance was entered into between him and one Strong, the agent of the defendant, who issued the policy, and received the order on Charles Wheeler, who was the manager of the transfer company, and Cotten's employer, for the payment of the premiums, payable in four installments, which premiums would have been paid by Wheeler according to the terms of the order if application had

been made to him therefor, but which order was never presented to the drawee, or payment demanded. The application for the policy and the policy constitute the contract between the parties, and each contains the usual conditions and stipulations found in contracts of this character, only a few of which need be stated to an understanding of the questions raised by the motions. The application is for a policy of insurance against bodily injuries, effected through "external, violent, and accidental means," which policy was based upon the following statement of facts, warranted to be true: That assured's occupation was transfer agent; that he was 32 years of age, and resided in Vicksburg; that his employer was the Vicksburg Transfer Company, and his wages were $75 per month; the amount of insurance to be $3,000 in case of accidental death, payable to plaintiff, his mother; amount of weekly indemnity for totally disabling injuries not to exceed $15; that he had never had, nor was he then subject to, fits, disorders of the brain, or any bodily or mental infirmity. The premiums to be paid for the time for which the insurance was taken all together amounted to the sum of $30. Upon the back of the policy is a condition that the policy shall not cover injuries resulting from the following causes:

"Entering, or trying to enter or leave, a moving conveyance, using steam as a motive power; riding in or on any such conveyance, not provided for the transportation of passengers; walking or being on any railway bridge or road-bed. Railroad employes excepted. * * * Voluntary exposure to unnecessary danger. * * *"

On the 26th day of January, 1888, Cotten met the passenger train coming from Jackson to Vicksburg at the depot at Jackson, and went into the baggage-car, and hung up his overcoat and ring on which were his transfer checks, stating that he had to go across the street, but would return. Soon after this the train backed down on the switch, and entered on the main track to Vicksburg. There is on the side of the track just west of the crossing on Capitol street a coal chute, where the train usually stopped and took on coal when going towards Vicksburg; and the intention of the engineer was to stop for that purpose at that time, until he got near the chute, when, learning from his fireman that it was not necessary, went on. The train was then running at a rate of speed of between four and six miles per hour, and this was its speed when Cotten attempted to get on it; he having come up Capitol street to the point where the baggage-car usually stood when the engine was receiving coal. Assured, while attempting to get on the train, as is supposed, (no one having witnessed the accident,) by some misstep or other accident was thrown under the train, and one limb was severed from his body by the wheels, from which injury he died the same evening. Some time after Cotten's death, Strong, the agent of the defendant, who took the application and issued the policy, and the only agent which defendant, at that time, had in this state, made an examination of all the circumstances connected with Cotten's death, and afterwards demanded of plaintiff the payment of the $30, the sum of the installments agreed to be paid, promising that the full amount of $3,000 would be paid within the time spec-

ified in the policy, and received from the plaintiff the money, for which he, as such agent, gave a receipt, and sent the money to the general agent of the defendant at Chicago, Ill., who some time afterwards returned the money to plaintiff, who immediately sent it back to the general agent, and demanded the payment of the policy. The general agent declined to accept it, and refused to pay the policy, upon the ground that the premium had not been paid before the death of Cotten. Cotten was classed as a "medium" risk, which classification embraces baggage-masters, express messengers, and brakemen on passenger trains, and was charged the same rate that they were.

These are all the facts necessary to be stated for a decision of the questions raised by the motions.

This being the first suit, in either the state or federal courts, in this state upon an accident policy, the questions involved have been examined and presented by the distinguished counsel on both sides with unusual care and ability, and numerous authorities have been cited and commented upon, which, considered together, establish rules of a general character, which are not so difficult to understand in themselves, the difficulty being in their application to the different facts in each case.

*First.* Insurance companies are bound by the acts, declarations, and agreements made by their agents, who are authorized to solicit insurance and to receive premiums, and issue and deliver policies; the acts, representations, and agreements of the agent being the acts of the companies.

*Secondly.* The contracts, covenants, and agreements, when made, and not in violation of law or public policy, are binding on both the insurer and the insured.

*Thirdly.* When the assured, in his application, makes statements required of him by the insurer, which he warrants to be true, and which, if untrue, under the contract, are to avoid the policy, they will have that effect, whether they are material or not, provided the statements made and warranted to be true are clearly within the meaning of the warranty, and so understood by the applicant, or made under such circumstances that he is estopped from denying that he so understood them.

*Fourthly.* In cases of doubt as to the proper construction of the contract, the conditions for forfeiture must be construed strictly against the company, and liberally in favor of the assured. And this is so for the reason that these conditions have the effect, if enforced, to defeat the very object of the contract. Insurance companies, in order to protect themselves against fraud and imposition, annex to the policies issued by them many conditions by which to avoid their obligations, many of which are put in type so small as not easily to be read, and are either not read, or, if read, not understood by the assured, and which importunate agents sometimes studiously avoid explaining and making known to the assured. The strict enforcement of these conditions would often work a great wrong to the confiding applicant, who often parts with his hard earnings with the hope and expectation of receiving some indemnity in

the day of misfortune for himself, or some support for his wife and children, or his parents, dependent upon his labors, when he is no longer able to provide for them. This rule is not only well established, but is right, and should be applied in all proper cases.

These are all the general rules that need be stated. The first question to be considered is: Shall the proposed amended pleas be filed? These pleas, in substance, allege that Cotten represented in his application that he was not possessed of, nor subject to, any bodily infirmity, and warranted the statements to be true, whereas, he was before that time, and was then, near-sighted and defective in his vision. Under the statutes of both the United States and this state, and the rules of practice, amendments may, on proper conditions, be allowed to the pleadings at any time before verdict, so as to bring the merits of the controversy between the parties fairly to trial; the necessity for such amendments often growing out of newly-discovered testimony, or arising from an unexpected presentation of the issues and development of the case; but this rule does not relieve the pleader from presenting his plea within the time required by the statute or the practice of the court, or within a reasonable time after ascertaining the facts upon which the defense is based, or, which is the same thing, a knowledge of such facts as will put a reasonable man on inquiry, which, if prosecuted, would have led to a knowledge of the matters sought to be pleaded.

The proof is that the policy was issued by Strong, the agent of the defendant, on the train, and while Cotten was in the discharge of his duties as transfer agent. The evidence further shows that Cotten usually wore eye-glasses, and the presumption is, had them on at that time. Strong is, as far as the evidence shows, still the agent of the defendant, and his knowledge of this fact was the knowledge of the defendant. In addition to this, the defendant's counsel reside here, as did Cotten in his life-time. A very little inquiry would have informed the counsel that Cotten wore eye-glasses, and the inference could easily have been drawn that it was to aid his eye-sight. I take it that the proper rule is that, when application is made to amend the pleadings after the trial has commenced, if required, it will only be allowed upon affidavit that the facts upon which the plea is based were not before known to the defendant; so that, if there were no other reasons for overruling the motion, it comes too late. But if the pleas were allowed to be filed, under the proof they could not be maintained. There is almost as much difference in the eye-sight of persons as in anything else. Some distinguish objects clearly at long distances; others only at short distances. Many of the latter use glasses to aid their vision, but perhaps not one in 50 of this class, if asked if he was laboring under bodily infirmity, would suppose that any allusion was made to his eye-sight, so long, at least, as his vision, aided or unaided, enabled him to attend to business as other people, which the proof shows Cotten had done for 12 years, and that of a difficult and hazardous character. A fair, not to say liberal, construction to be placed upon the answer of Cotten is that he did not, and could not be expected to, suppose that his eye-sight was involved in the answer he made, or that he was

warranting that his eye-sight was good. But this is not all. The agent, Strong, must be presumed, at the time the policy was issued, to have known that Cotten wore eye-glasses, and that it was to aid his sight. This was apparent; and, under the general rule, general warranties of soundness do not embrace patent and obvious defects. This is enough to say on this motion.

The second motion is to instruct the jury to return their verdict for the defendant. The contract being admitted, as well as the death of assured, during the period of the insurance, through external, violent, and accidental means, the plaintiff is entitled to recover the amount of the policy, unless defeated by the establishment of some affirmative defense; a number of which have been set up by special pleas, but most of which, under the proof, have been abandoned by the defendant, and need not be considered. The failure to present the order for the payment of the installments of the premium as they fell due, when they would have been paid if presented, estops the defendant from setting up this defense, even if the premium had not been afterwards demanded and paid. Cotten was insured as a "railroad employe," within the meaning of the policy, although not employed by the railroad company,—the words of exception, "railroad employes," having reference to the character of employment, rather than to who is the employer,—and therefore had the right to go on or go off the train when moving, or to stand on the road-bed. The main and it may be said the only really debatable ground of defense is, that Cotten attempted to get on the train unnecessarily and voluntarily while it was in motion, which, it is claimed, was a "voluntary exposure to unnecessary danger," within the meaning of the condition quoted. Whether this is so or not deserves serious consideration. In one sense of the term he did go there voluntarily and unnecessarily, for he voluntarily engaged in the business of a transfer agent on the Vicksburg & Meridian Railroad; but when he engaged in that service, which he had a right to do, and assumed the risks of the position, to indemnify himself against which risks he took out this policy, it became necessary that he should go on the train, and, being necessary, it was in that sense involuntary.

It has been urged with earnestness by defendant's counsel that he should not have left the baggage-car when he entered it and hung up his coat and checks. What his purpose was we do not know, but must presume it was lawful and perhaps necessary. The defendant has failed to show that it was not, and the burden is on it to do so. He had every reason to suppose that the train would stop for coal at the chute, and was at the place where he could have boarded it while it was standing still; but, contrary to what we must presume under the circumstances he reasonably expected, it moved on, but at such a slow rate of speed, as the evidence shows, that any one accustomed to getting on a moving train could then have done so without danger. Accidents may, and sometimes do, happen in getting on the train when standing still; but it was also the purpose to secure indemnity for injuries which might be received when getting on or off a moving train that this policy was ob-

tained. Whether or not his effort to get on the train moving at the rate stated was a "voluntary exposure to unnecessary danger," is a question for the jury.

As a further answer to the defenses set up by defendant, it is to be presumed that the examination made by Strong, after the death of Cotten, was under instructions of the defendant. Without any fraud or misrepresentations by plaintiff, or any one acting for her, Strong, the agent, demanded and received the full amount of the premiums due, and paid the same over to the defendant, upon the understanding that the amount of the policy would be paid within the specified time; in all of which he appears to have acted in good faith towards both parties. This, it seems to me, should be held as a waiver of all the other defenses based on facts known to Strong at the time he collected the premium, and now set up, and binds the defendant, whose refusal to pay the amount of the policy must have arisen from some misunderstanding of such facts. *Association v. Beck*, 40 Amer. Rep. 296; *Oshkosh Gas-Light Co. v. Germania Fire Ins. Co.*, 37 N. W. Rep. 819; *Insurance Co. v. Raddin*, 120 U. S. 183–197, 7 Sup. Ct. Rep. 500; 1 Wood, Fire Ins. 50, 51; *Schoneman v. Insurance Co.*, 16 Neb. 404, 20 N. W. Rep. 284.

The result is that the motion of the defendant for an instruction by the court to the jury to return a verdict in its favor must be overruled, and the motion of the plaintiff for an instruction by the court to the jury to return a verdict in her favor for the sum of $3,000, with 6 per cent. interest thereon, according to the policy, must be sustained.