BEETS *v.* INTER OCEAN CASUALTY COMPANY.*

(*Knoxville*, September Term, 1929.)

Opinion filed October 19, 1929.

S. E. HODGES, for complainant, appellant.

CATES, SMITH, TATE & LONG, for defendant, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

By an arrangement with the Southern Railway Company, named as defendant herein, the Inter Ocean Casualty Company issued contracts of accident insurance to employees of the Railway Company, and for the premiums took orders on the Railway Company's paymaster for payment out of the wages of the insured employees.

Complainant's husband, Hugh Beets, contracted for and received such a contract or policy, effective by its terms on December 10, 1927, with complainant named as beneficiary. The insured met death by accident on April 7, 1928, and payment of the insurance was successfully resisted in the chancery court and Court of Appeals, on the ground of forfeiture for nonpayment of premiums.

The insured had two pay days each month. On the last day of each month he was paid wages earned during the first half of the month. His wages for the last half of the month were paid on the 15th of the following month. The company did not require the payment of any premium when the policy was issued, but the contract provided that premiums for two months ($9.20) should be paid out of his "wages the month of January," and that the same amount should "be deducted the month of February." Those two payments, if made, would have extended the insurance beyond the date of the insured's death.

The order on the paymaster, signed by the insured and made a part of the insurance contract, contains a further provision as to the wages from which premiums were to be paid, as follows: "I also agree that if my wages are paid to me other than once a month then each installment, instead of being deducted and paid from a month's wages as herein provided is to be deducted and paid from that part of the month's wages first payable to me."

The insurer and the Railway Company construes this clause to constitute an agreement by the insured that each premium installment would be paid each month out of wages earned during the first half of the month

and payable on the last day of the month, and that when not so paid an installment would be in default. So contending, the insurer relies upon a provision of the contract that upon default of a premium installment the "insurance shall at once terminate without notice."

While the contract designated the paymaster as the agent of the insured for the payment of the premiums, the custom and practice pursued by the insurer did not call for any initiative on his part. Each month the insurer presented to the paymaster a list of employees from whose wages a specified deduction was to be made, and payment was so made whenever the earned wages were sufficient.

Pursuant to this custom, the insurer, near the end of January, made request of the paymaster to deduct $9.20 from the wages earned by the insured in January, which was refused because he had not earned that amount during the first half of the month. The request tendered the paymaster was phrased: "List of deductions to be made from wages of employees earned in the month of January, 1927, on account of insurance as per orders given by them." It was tendered and dishonored before the wages earned in the last half of January were payable. The same request was repeated the latter part of February, and was refused for the same reason. No further action was taken by the insurer, and no notice of forfeiture was given to the insured.

While neither of the lists submitted to the paymaster expressly requested that the deduction be made only from wages earned during the first fifteen days of each month, both the insurer and the Railway Company so treated them, and it is agreed that no request for deduc-

tions from the earnings of the latter part of the month was ever made by the insurer.

The uncontroverted evidence is that the wages of the insured for the first half of January were insufficient to meet the payment of $9.20; and that he earned nothing in the first half of February. However, his earnings for the last half of January were $28, and for the last half of February $14.40. His earnings in March were: first half, $32.50; last half, $40. This $40, and $16 earned in April, was unpaid at the date of his death.

The general agent of the insurer, who testified in the case, stated that when the paymaster reported the insured as having earned nothing during the first half of February, he concluded that the insured had left the service of the railway. However, he made no investigation of this, although the relations between the insurer and the Railway Company were friendly, and the proof is that any information requested would have been furnished by the paymaster from his records.

We cannot accept the construction placed upon the paymaster's order by the insurer and the Railway Company. Construing the several clauses together, as one instrument, we think its obvious meaning is that the insured agreed to pay the first installment of the premium out of his wages earned in the month of January, and since those wages were payable in two parts, he agreed "also" that the entire monthly premium installment should be paid out of, or deducted from, the first part of his January wages payable to him. The language of the agreement is not that the premium was to be paid out of wages earned in any particular part of the month, but it was agreed that the premium was to be paid "from that part of the month's wages first payable to

me." If the employee did not work the first half of the month, then the "part of the month's wages first payable" to him was that earned during the last half of the month and payable on the 15th day of the following month. Likewise, if the employee worked only a part of the time and did not earn sufficient wages during the first half of the month to pay the premium due for the month, the insurer was entitled to have the paymaster retain the amount earned, to be supplemented by a further deduction from wages earned during the second half of the month, and then pay the full premium before paying any part of the month's wages to the insured employee.

The import of the phrase, "instead of being deducted and paid from a month's wages as herein provided," in the clause under consideration, is that when a month's wages are paid in two installments, the premium for the month is not to be pro-rated or divided between the two wage payments, but the entire premium is to be paid out of the first wages of the month which are payable to the insured.

The clause is introduced by the word "also," indicating that it was supplementary to and not in lieu of the principal agreement that the premium installments were to be paid from "wages the month of January," etc.

So we think the ordinary and natural meaning of the contract is that the insured agreed to pay the first premium installment of $9.20 from his wages for the month of January, and further agreed that the entire amount for the month would be paid out of that part of the month's wages first payable to him by his employer, without regard to the days of the month on which such wages were earned.

Whatever interpretation was placed on the contract by the insurer in the dealings with the Railway Company, there was nothing in the language used to notify the insured that his premium would be in default unless his earnings for the first fifteen days of January should be sufficient to pay it. And there is no evidence that the insured had any knowledge that the insurer so construed the contract.

We are, therefore, of opinion that the earnings of the insured for all the month of January were available to the insurer, under the terms of the contract, for the payment of the January installment of the premium, and that the earnings for the entire month of February were subject to the satisfaction of the February payment. Following the agreement and custom it had established with the Railway Company's paymaster, it was clearly the duty of the insurer to request the paymaster to deduct the respective amounts from the earnings of the insured for the last half of January and the last half of February, which the proof shows were sufficient in amount to meet and satisfy the stipulated premium installment for each month. The failure of the insurer to collect and receive the two payments was therefore the result of its own fault and not the result of any default on the part of the insured.

A lapse of the policy, under the provisions for termination of the insurance without notice, upon default in the payment of a premium installment, will not be decreed, when the proof shows that the insured provided the wage fund from which it was agreed that payments were to be made, and the insurer failed to follow the agreed method of collection by demanding and receiving that part of the insured's wages which were

assigned to it. *Eury v. Insurance Company,* 89 Tenn., 427, 14 S. W., 929, 10 L. R. A., 534; *Lyon v. Travelers Ins. Co.,* 55 Mich., 141, 20 N. W., 829, 54 Am. Rep., 354.

It is shown in the proof that the wages earned by the insured in January were paid to him by the Railway Company on February 15th, and that his February wages were paid to him on March 15th; and the fact that all the earned wages were so received by him is urged as proof that the insured knew that no deduction had been made for the premiums, and therefore recognized and acquiesced in the termination of the insurance.

Notwithstanding the stipulation of the insurance contract that the paymaster should be treated as the agent of the insured in making the premium payments from the wages assigned, we are inclined to agree with the Supreme Court of Michigan in *Lyon v. Travelers Insurance Company, supra,* that the wage assignment, accepted by the Railway Company, became effective and should be treated as a payment and satisfaction of the monthly premium when the necessary amount of wages for the month was earned and had accrued to the credit of the insured. However, we think the contention of the insurer should be overruled because it is not shown that the insured knew that he was being paid the full amount of his earned wages without deduction. As to this we think the burden of proof is on the insurer, and we will not presume, in the absence of proof, that the insured, an ordinary laborer, kept a record of his time by which to check the record kept by his employer, the Railway Company. Especially do we decline to entertain such a presumption in the face of the testimony of the complainant that the insured stated to her that the Railway Company took the premiums out of his wages be-

fore he received his checks. While this testimony was objected to, the record fails to show that the objection was called to the attention of the chancellor or that any ruling was made upon it.

██ It is our conclusion that the contract of insurance, made effective by the insurer on December 10, 1927, without requiring the payment of any premium in advance, had not lapsed and was in full force and effect at the date of the death of the insured, April 7, 1928, and that complainant is entitled to recover its face value, with interest from the date the suit was instituted, and all costs. Decree will be entered accordingly, reversing the decrees of the Chancellor and the Court of Appeals to that extent.

██ The proof does not show bad faith, and the statutory penalty is not allowed. There is no basis for a decree against the Southern Railway Company, since complainant has been accorded full relief on the insurance contract, and the decree of the Court of Appeals dismissing the suit as to it will be affirmed.