# Richmond

## MARY THOMPSON v. THE INTER-OCEAN CASUALTY COMPANY.

January 14, 1932.

Present, All the Justices.

The opinion states the case.

*Allen & Jefferson,* for the plaintiff in error.

*Ozlin & Ozlin* and *C. F. Blackwell,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Mary Thompson, the plaintiff in error, instituted an action at law against The Inter-Ocean Casualty Company, the defendant in error, on an accident insurance policy issued to her husband, Rufus E. Thompson, who met his death through accidental means on January 11, 1930. The case was submitted to the trial court without a jury and was dismissed, judgment having been entered for the defendant in error. The plaintiff in error is here complaining of that judgment. The parties will be referred to as plaintiff and defendant, the respective positions they occupied in the court below. There, the plaintiff in error was the plaintiff and the defendant in error, the defendant.

There seems to be no conflict in the material facts which may be stated thus: By an arrangement with the Southern Railway, the defendant issued accident policies of insurance to the employees of the railway company, and Rufus E. Thompson being an employee of said company was issued, on June 8, 1929, one of these policies. He named his wife, the plaintiff, as his beneficiary. The premium was to be paid on the "monthly plan," and he gave an order on his wages to secure its payment. This was the customary means adopted by the defendant with the employees who purchased this insurance and by agreement with the railway company the orders were honored and the money thereby represented deducted from the employees wages on the 30th of each month and paid over by the railway company at stated intervals to the defendant. Rufus E. Thompson, the insured, was accidentally killed on January 11, 1930, and the plaintiff demanded the amount of insurance provided for in the policy, which was $1,000.00, but the defendant refused payment. Then this action followed and terminated, as previously stated, by a judgment for the defendant, the trial court holding that the policy had lapsed on January 8, 1930,

just three days prior to the death of the insured for non-payment of premiums.

On June 8, 1929, the time when the policy was issued and became effective, the insured was regularly employed by the Southern Railway as a bridge carpenter. The policy provided that the premiums should be paid monthly under the "pay order" plan at the rate of $4.60 per month. In the application which was made a part of the insurance contract is this provision:

"I agree to pay for said policy monthly premium of $4.60 in monthly installments of $4.60 each, on the following plan: Insert Number of Installments, or Monthly
Pay Order   If paymaster's order or note is given to provide Insert Order, Note, Cash or Club
for the payment of these installments, I agree to pay them as therein provided, and do hereby make such order or note a part of my contract with the company. If no paymaster's order or note is given, the first installment shall be due without notice ten days after date of policy, and each deferred installment on the same day of each succeeding month until all are paid. I further agree that if any payment be not made by twelve o'clock noon, standard time, of the day when due, as above specified, all my rights under said policy, and the rights of the beneficiary thereunder, shall then and thereby become void, and that my policy can be reinstated only at the option of the company, and as provided in the policy, and that no claim for loss arising between the time of such forfeiture and reinstatement shall be valid against the company."

In the "paymaster's order" which was also made a part of the insurance contract is this provision:

"I have this day made application to the Inter-Ocean Casualty Company, Cincinnati, Ohio (hereinafter called the Company), for a policy of insurance. This order is given to provide for the payment of the premium thereon which you

are authorized and requested to deduct from my wages in installments as hereinafter designated, pay to the Railroad Employee's Insurance Agency Company, Washington, D. C., general agents for the Inter-Ocean Casualty Company, for me, and charge against my pay account for services rendered or to be rendered to my employer on whom this order is drawn. If for any reason whatever you fail to make deduction of any installment from the wages of the period hereinafter designated for that purpose, you are further authorized and requested at the option of the Company to deduct and pay the defaulted installment from any of my subsequent wages."

Another provision in the order is as follows:

"I also agree that if my wages are paid to me other than once a month, then each installment, instead of being deducted and paid from a month's wages as herein provided, is to be deducted and paid from that part of the month's wages first payable to me."

Again the order has this provision:

"I understand and agree as to the duration of my insurance: (1) That said policy, after taking effect, so continues until the expiration of the period hereinafter designated for the deduction of the last installment of premium unless I sooner cease to be in the service of my present employer, or unless default be made in the payment of any prior installment, in either of which events my insurance shall at once terminate without notice, except as it may be continued in force by reason of premium previously paid; (2) that the payment of each installment in which the said premium is payable shall continue my policy in force for a 'specified period,' all such periods to be computed successively from the date of the policy; (3) that should the policy lapse at any time by reason of nonpayment of any installment and premium afterwards be paid, then such payment shall reinstate the policy only as provided therein. * * *

"Section (c) If the premium is paid in monthly installments, each payment will continue the policy in force for a period of one calendar month."

The policy defines a "specified period" as follows:

"The payment of each installment shall continue the policy in force for a 'specified period,' all such periods to be computed successively from the date of the policy. Should the policy lapse at any time by reason of nonpayment of any installment and premium afterwards be paid, then such payment shall reinstate the policy only as provided therein."

The order was accepted by the Southern Railway Company as was its custom in regard to the payment of premiums by its employees and it deducted the monthly premiums from the wages of the insured and paid them over to the defendant. The first deduction of $9.20 was made by the railway company on the 30th day of July, 1929, from wages earned from July 1st to 15th. This deduction paid the premiums for the months of June and July of that year. August premium was paid by a like deduction of $4.60 made on August 30th, and thereafter the premiums were so deducted and paid by the insured on the 30th day of each succeeding month up to and including the deduction made and premium paid on December 30, 1929. The insured was temporarily laid off from January 1st but had been notified to return for work on January 13th but as already stated he died January 11, 1930. At the time of his death the insured was on the payroll of the railway company, and had wages due him of $14.76 which had been earned by him in the second or last half of December, 1929. At the time of his death, no wages had been earned in January. His wages were customarily paid him on the 15th and 30th days of each month and had he lived until January 15th, he would have been paid the balance of his December wages.

By express provision, the application, policy and "pay order" constituted the insurance contract.

The defendant insists that under the contract it was the duty of the insured to pay the monthly premium on or before the 8th day of each month; that whenever the insured worked a sufficient time to earn $4.60 on or before the 8th of each month that amount automatically became the property of the defendant and constituted payment of the monthly premium and that if the insured earned no wages, or insufficient wages to equal the $4.60 before the 8th of each month, then the policy lapsed.

The defendant also maintains that the contract is plain and unambiguous and should be construed as written.

We cannot agree that under the contract the monthly premium had to be paid in all events on or before the 8th of each month, nor do we agree that it is plain and unambiguous as to the specific time in each month when the monthly premium should be paid.

The insured, under the rules of his employer, had two pay days in each month. On the 15th he was paid his wages which had been earned from the 15th to the 30th of the previous month, and on the 30th he was paid his wages which had been earned from the 1st to the 15th of that same month. While his wages were earned before the pay days, the money was not payable to him and he had no right to demand it regardless of when earned until the regular pay day. Likewise, he not being entitled to demand his wages until pay day, the defendant under the pay order was not entitled to the premium until the regular pay day. On the 30th day of each month the defendant prepared and presented to the railway company a deduction list which included all of the deductions to be made from the employees who carried insurance with the defendant. The insured was embraced in the deduction lists turned over to the railway company each month and the insurance premium which he had agreed to pay was paid in this manner from the date the policy became effective until and including the deduction

made on December 30th. It certainly seems reasonable that the defendant would not be entitled to the premium, which it had agreed to receive in the manner set forth, before the insured was entitled to receive his pay. Every premium which was paid the defendant was paid in the manner described on the 30th of each month and it always so received it without any protest.

No definite and specific day in the month was fixed in the application, policy or pay order for the payment of the premium. It is true the policy became effective on the 8th day of June, 1929, but no premium was paid on that day. The first premium was not paid until July 30th, some fifty-two days after the effective date of the policy. Then, after the payment of the premium on July 30th, the insured, through the railway company, by the express consent and request of the defendant, as evidenced by the said list of premium deductions which the defendant presented to the railway company on the 30th of the succeeding months, paid, and the defendant accepted premiums on the 30th of each month through August, September, October, November and December. No day having been designated in the contract for the payment of the premium and the parties having treated the 30th of each month as the day on which the premium should be paid, the insured had until the 30th day of January, 1930, to pay his January premium.

In cases where there is doubt or uncertainty as to the meaning of a contract, the construction placed thereon by the parties themselves is entitled to great weight. *Holland* v. *Vaughan*, 120 Va. 328, 91 S. E. 122; *Chick* v. *MacBain*, *ante*, page 60, 160 S. E. 214.

If the premiums were due on the 8th of each month as claimed by the defendant and payment of them was made on the 30th, then the policy lapsed on the 8th of each month and for the remainder of the month the insured was not protected notwithstanding he always paid the premium on

the 30th for a full month. Surely it was not intended that the insurance would be in force for only eight days in each month.

■ The defendant contends that the premium had to be paid out of wages earned from the 1st to the 8th of the month and if a sufficient amount was not earned in that time the policy lapsed. But it was agreed that if the insured had two pay days a month the premium was to be "deducted and paid from that part of the month's wages first payable to me" and it was further agreed that "if for any reason whatever you fail to make deduction of any installment from the wages of the period hereinafter designated for that purpose, you are further authorized and requested at the option of the Company to deduct and pay the defaulted installment from any of my subsequent wages."

It will be observed that the wages first payable to the insured in a given month were payable on the 15th, which represented wages earned from the 15th to the 30th of the previous month. No wages earned in a current month were payable until the 30th, therefore the wages earned in a current month "first payable" to the insured were not available for the premium until the 30th, and if a default occurred then the premium could be collected from any subsequent wages payable to the insured.

No contract of insurance similar to the one here involved has previously been the subject of litigation in this court— at least, we are unable to find any case decided by this court in which such a contract has been dealt with. Contracts of this nature have frequently been in litigation in the courts of other jurisdictions, and in Tennessee the defendant here was the defendant in a case involving a similar contract and presented there upon almost the same facts as we have here. That case may be found under the style of *Beets* v. *Inter-Ocean Casualty Co.*, 159 Tenn. 564, 20 S. W. (2nd) 1040, 1041. The contentions of the defendant in that case were sub-

stantially the same as those urged here, but the Tennessee court decided adversely to it. The court held that:

"We cannot accept the construction placed upon the paymaster's order by the insurer and the railway company. Construing the several clauses together as one instrument, we think its obvious meaning is that the insured agreed to pay the first installment of the premium out of his wages earned in the month of January, and, since those wages were payable in two parts, he agreed 'also' that the entire monthly premium installment should be paid out of, or deducted from, the first part of his January wages payable to him. The language of the agreement is not that the premium was to be paid out of wages earned in any particular part of the month, but it was agreed that the premium was to be paid 'from that part of the month's wages first payable to me.' If the employe did not work the first half of the month, then the 'part of the month's wages first payable' to him was that earned during the last half of the month and payable on the 15th day of the following month. Likewise, if the employe worked only a part of the time and did not earn sufficient wages during the first half of the month to pay the premium due for the month, the insurer was entitled to have the paymaster retain the amount earned, to be supplemented by a further deduction from wages earned during the second half of the month, and then pay the full premium before paying any part of the month's wages to the insured employe. * * *

"So we think the ordinary and natural meaning of the contract is that the insured agreed to pay the first premium installment of $9.20 from his wages for the month of January, and further agreed that the entire amount for the month would be paid out of that part of the month's wages first payable to him by his employer, without regard to the days of the month on which such wages were earned.

"Whatever interpretation was placed on the contract by the insurer in the dealings with the railway company, there

was nothing in the language used to notify the insured that his premium would be in default unless his earnings for the first fifteen days of January should be sufficient to pay it. And there is no evidence that the insured had any knowledge that the insurer so construed the contract. * * *

"A lapse of the policy, under the provisions for termination of the insurance without notice, upon default in the payment of a premium installment, will not be decreed, when the proof shows that the insured provided the wage fund from which it was agreed that payments were to be made, and the insurer failed to follow the agreed method of collection by demanding and receiving that part of the insured's wages which were assigned to it. *Eury* v. *Insurance Co.*, 89 Tenn. 427, 14 S. W. 929, 10 L. R. A. 534; *Lyon* v. *Travelers' Ins. Co.*, 55 Mich. 141, 20 N. W. 829, 54 Am. Rep. 354. * * *

"It is our conclusion that the contract of insurance, made effective by the insurer on December 10, 1927, without requiring the payment of any premium in advance, had not lapsed, and was in full force and effect at the date of the death of the insured, April 7, 1928, and that complainant is entitled to recover its face value, with interest from the date the suit was instituted, and all costs."

We are in accord with the decision of the court in that case which seems to be supported by the weight of authority, but there are some cases to the contrary. A number of cases may be found in an extended note in 67 A. L. R. 175, 180.

The judgment complained of is reversed and set aside and judgment entered here for the plaintiff for the amount claimed in her notice of motion.

*Reversed.*