## EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. DAVIS.

### No.25021. Sept. 10, 1935.

Rehearing Denied Dec. 3, 1935.

Withdrawn, Modified, Refiled and Application for Leave to File Second Petition for Rehearing Denied June 2, 1936.

Randolph, Haver, Shirk & Bridges, for plaintiff in error.

Sam A. Neely, D. F. McMahon, and D. F. Rainey, for defendant in error.

CORN, J. This action was brought by Myrtle Davis upon an insurance policy or contract of insurance upon the life of her husband, Walter Davis. Plaintiff's original petition alleges issuance of the policy sued on, identifies the policy, attaches it as an exhibit, and alleges that the insured, and quite a few of the other employees of the city of Tulsa, took out similar policies; that it was agreed and contracted that premium payments should be made by and through the city of Tulsa from wages earned by the employees; that the city of Tulsa and its employees were the agents of the defendant for the purpose of remitting premiums from insured's wages; that defendant is estopped from asserting nonpayment of premiums by reason of its failure to notify insured of such nonpayment. A performance of all conditions precedent and requirements of the policy on the part of the insured and the beneficiary is alleged.

Before the case was tried the plaintiff filed an amended petition setting forth, in addition to matters contained in the original petition, a quotation of the following portion of the insurance policy sued on:

"It is understood and agreed that if the Equitable shall be notified that premiums on this policy are no longer to be remitted through the employer designated on the original application, or if the premiums to be remitted to the Equitable through such employer shall at any time be for less than ten individual lives, the Equitable may, at any time thereafter, by a written notice mailed to the insured's last known address, require the payment of premiums hereunder on a quarterly, semi-annual or annual basis commencing with a specified date, with such irregular premiums as may be necessary to cover the period from the date to which the monthly premiums were paid, to the due date of the first premium on the basis specified in said notice.

"The Equitable Life Assurance Society of the United States.

"New York, Oct. 10, 1930.

"J. M. Keys,

"Asst. Registrar."

The portion of the policy sued on, providing for a grace of 31 days, is also set forth in plaintiff's amended petition.

Defendant's verified answer sets forth a general denial, admits defendant's corporate existence, admits the issuance of the policy sued on, and sets forth a specific denial of plaintiff's allegation that policy was in force on the date of insured's death.

Plaintiff's reply denies all allegations of defendant's answer which controvert or traverse the allegations of plaintiff's petition, and sets forth a plea of estoppel asserting the agents of defendant accepted moneys for premium, thereby estopping defendant from asserting nonpayment of premium.

The case was tried before a jury which resulted in a verdict for the plaintiff. The parties will be referred to herein as they appeared in the trial court.

Myrtle Davis, the plaintiff, testified that she was the beneficiary in the policy sued on; that she was the wife of the insured; that the insured, Walter Davis, died of an injury on the 10th day of July, 1932; she then identified the policy and it was introduced in evidence.

J. M. Davis, called by the plaintiff, testified that he was the son of the insured; that he was also an employee of the city of Tulsa; that he and the insured took out

similar policies with the defendant about the 10th or 13th of October, 1930; that the insurance was solicited by one Pearl Wilson; that insured died the 10th day of July, 1932; that claim under the policy was presented; that payment was refused by defendant in writing, this writing was produced by witness, identified and introduced in evidence; that insured received injuries to his eyes while working for the city on May 28, 1932; that premiums on policies were taken out of insured's pay checks.

R. D. Werner testified that she was an employee of the city of Tulsa in the bookkeeping department and had charge of deducting premiums on policies of city employees; that Walter Davis held one of these policies; that insured received for services performed for month of May, 1932, from the city of Tulsa three checks: One for $4 and one for $10, and another for $12; that R. L. Laws, city water commissioner, instructed her to deduct premiums on insurance policies of water department employees, of which the insured, Walter Davis, was one; that following these instructions she did make premium deductions from date of issuance of policies up to and including a premium deduction made April 10, 1932; that on three occasions after that date Walter Davis received pay from the city of Tulsa as follows:

May 2 _____$ 4.00
May 13 to 26 _____ 10.00
May 27 to June 11 _____ 12.00

That the amount of the monthly premium was $4.30; that after April 10, 1932, she held, as agent of the city of Tulsa, money in excess of the amount of $4.30 payable to Walter Davis; that she never received any instructions to discontinue payment of premiums on the Walter Davis policy, and that she had always paid the premiums up to and including the payment of April 12th; that the last check issued to Walter Davis was for $12; this check was then read to the jury and revealed that it was never endorsed by Walter Davis; that it was delivered to and endorsed by J. M. Davis and not the insured; that there was a change in the city administration on May 3, 1932; that Mr. Davis never gave her instructions not to make deductions for premiums on his policy.

W. K. Gray, called by the defendant, testified that he was auditor and timekeeper for the water department of the city of Tulsa; that his employment started with the change of administration on the 3rd day

of May, 1932; that he was working there at the time Walter Davis received the injury to his eyes. That Walter Davis was paid by the hour on the basis of 50c per hour; that some employees were and some were not paid for legal holidays, such as Decoration Day; that the pay checks of employees were made up from time sheets which he turned over to the city auditor at the city hall. A quotation from this witness' testimony is as follows:

"The Court: Prior to the time that you turned to the auditor at the city hall your reports on the time of the deceased, Davis, from which his pay checks were made, did he know what you were turning in? The Witness: No, sir; he did not know."

Pearl Wilson, called to testify for defendant, testified that she solicited the insurance policy sued on from Walter Davis, as agent for the defendant; that in arranging for the premium payments she provided insured with card which he signed; that she delivered the card to the bookkeeping department of the city of Tulsa; that the card provided for premiums to be deducted regularly; that the card was signed the same day the policy was issued; that she went to the city hall to check payments on premiums with Miss Werner; that she helped make up the record for deductions of premiums from wages; that the last premium was received on insured's policy April 15th; that she was at city auditor's office in May, but did not receive payment on the Davis policy. We quote the following from the testimony of this witness:

"Q. Tell these gentlemen, if you please, how the money was remitted that was turned over to you as payment on these premiums on these policies. A. They are made out by Commissioner Pratt, and he gets a cashier's check and sends it in. Q. To whom does he send it? A. The Equitable Life in New York. Q. Whom did you say Mr. Pratt was? A. The finance commissioner. Q. He is an employee of the city of Tulsa, A. Yes, sir. Q. And he sent these premiums to The Equitable Life, that is your testimony? A. Yes, sir."

After the card was turned over to the city of Tulsa by Pearl Wilson, the premium payments were regularly remitted by the city of Tulsa to the defendant on the Walter Davis policy from the date of its issuance on the 10th day of October, 1930, until the May 10, 1932, premium became due, which premium was not deducted.

J. K. Taylor was called by defendant and testified that he was defendant's district manager, located at Tulsa, that he knew

Pearl Wilson; that Pearl Wilson had no authority to constitute the city agent for this defendant. This witness did not attempt, however, to deny that the defendant accepted and received without complaint the benefit of the moneys remitted, on the policy in question, by the city.

Although defendant sets forth four errors alleged to have been committed by the trial court, we will consider them under two general propositions, to wit:

"A. That evidence did not justify and support a verdict of the jury.

"B. That the evidence and the pleadings did not form a proper foundation upon which instructions Nos. 2, 3, and 4 might be given."

It is the contention of the plaintiff that, inasmuch as assured had to his credit during the month of May, 1932, in the hands of the city of Tulsa, funds sufficient to have paid the premium falling due for that period, the defendant is estopped from asserting such nonpayment in defense to this action. The undisputed facts are that the premiums had been paid regularly by the city of Tulsa since the issuance of the policy on October 10, 1930, until May, 1932; thus, we see that the payment made which fell due on the 10th day of April, 1932, carried the policy in effect until May 10, 1932, sufficient funds being available for the purpose of making payment at that time, or within the 31-day grace period provided for in said policy, that the defendant will be estopped from asserting nonpayment of that premium, thus carrying the policy in force until June 10, 1932, at which time the 31-day grace period would begin to run and carry the policy in full force and effect until the 11th day of July, 1932. It will be recalled that assured died July 10, 1932.

The assured, employed as a blacksmith, being paid 50c per hour, and earning from $26 to $64, not having received $12 of his earnings for the month of May, 1932, and in addition to which there being some evidence to the effect that he was expecting and entitled to wages for May 30, 1932, Decoration Day, the testimony not being clear as to whether or not he was entitled to pay for that day, and having received no notice of default in premium payments from the defendant, could have had no knowledge that the premium was not paid.

In the case of Beets v. Inter-Ocean Casualty Co., 159 Tenn. 564, 20 S. W. (2d) 1040, it was held that the burden of proof is on the insurer in an action on an accident policy to recover for an injury to a wage earner to show that the insured knew that he was being paid the full amount of his earned wages without any deduction being made to take care of the premium, and that it will not be presumed in the absence of proof that the insured, an ordinary laborer, kept a record of his time by which to check the record kept by his employer. The court is here concerned with a much stronger case than the Tennessee case above cited. In that case the insured had personally drawn all of his wages from his employer; such is not the case here, inasmuch as the evidence is undisputed that a third party received payment of the last $12 of the wages due Walter Davis, the insured.

In the case of Cotton v. Fidelity & C. Co. (1890) (C. C.) 41 Fed. 506, it was held that where the insurer failed to present to the employer an order of the insured for the payment of premiums on a policy from his wages as they fell due, it was estopped from setting up as a defense the nonpayment of the premiums.

See, also, Moore v. Globe Indemnity Co. (1907 Manitoba) 36 D. L. R. 489, wherein it was held that where the employee had sufficient money earned for the purpose of payment of the premiums, it was the duty of the insurance company to look to such money or to notify the insured of its intention to look directly to him for the payment of premiums on the policy, and that the failure of the insurer to so notify the insured will estop it from insisting upon a forfeiture of a policy for nonpayment of premiums. To the same effect see Wick v. Western Life & C. Co. (1921) 60 Mont. 553, 199 Pac. 272.

It was held in the case of Johnson v. Standard Life & Accident Insurance Co. (1906, Tex. Civ. App.) 97 S. W. 831, that where the circumstances are such as to lead the employee to believe that the amount of the premium has been deducted, although he, in fact, has been paid his full wages, the policy will not be forfeited, where the insurer gave him no notice of nonpayment, it appearing that the insurer's agent had told him that he had nothing to do with the payment of the premiums but to give the order to his employer.

In the case at bar the insured was led to believe by Pearl Wilson, the solicitor of the insurance, that all that was necessary for him to do was to take out the policy, present his employer with authorization or rather allow the insurer's employee, Miss Wilson, to present it to the employer, and to earn for each month an amount of mon-

ey in excess of $4.30, the premium due on this $1,000 policy, in order to keep the policy in good standing. The insured having complied with this agreement, the insurer will be estopped from asserting a nonpayment of premiums. it having relied upon the city and its employee, Miss Wilson, to collect its premiums from insured's earnings.

A regular course of proceedings had been followed by all parties concerned for 18 months before any default was made in the premium payments on insured's policy. The insured herein is not chargeable with such neglect or lack of care as is brought about by a change of city administration or by the negligence of insurer's employees and the solicitor of insured's policy in failing to properly remit the premiums on this policy. Insured would be presumed to rely on the course of proceedings long established, and naturally would expect that his premium payments would be made as usual. Where any course of proceedings is followed in the payment of premiums, a divergence from a course of proceedings by the insurer, without notifying the insured, will estop the insurer from defending a suit on the policy for nonpayment of premiums.

In the case of McCorkle v. Texas Benevolent Association (1888) 71 Tex. 149, 8 S. W. 516, the court stated this rule as follows:

"Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that by conformity thereto his policy will not be forfeited, followed by due conformity on his part, will and ought to estop the company from insisting upon a forfeiture, though it might be plain under the express letter of the contract."

True, it might be said that it was not incumbent upon the insured's emp'oyer, the city of Tulsa, or the solicitor of the insurance policy here sued on. Pearl Wilson, to either jointly or severally supervise, manage, and in every way bring about the payment of the premiums on insured's policy, but having once undertaken to act in insured's behalf in this regard, and all parties having led insured to rely upon a continuance of such a course of action, they cannot. without warning or notice, discontinue making such payments, to the detriment of insured or the beneficiary in this policy. Once having undertaken the task, they must perform it diligently, well, and without neglect, just as a man is not obliged to enter a position of peril to save another, but having done so, he is not to be permitted to bring the person out of the perilous position, and then allow him to perish, through negligence.

Fault is found with instructions Nos. 2, 3, and 4. Instruction No. 2, first, makes a statement of the fact, to the jury, of such facts as are undisputed in this case, such as the issuance of the policy and the time of 'the death of the insured, and then presents the question of fact to the jury for their determination as to whether or not insured drew from the city of Tulsa his entire wages from his employer, the city of Tulsa, and if his entire wages were drawn from the city of Tulsa with the knowledge that he was leaving nothing for the payment of the premium on his insurance policy, that the verdict of the jury should be for the defendant.

Instruction No. 3 merely stated to the jury the question of fact for their determination as set forth in instruction No. 2 in the alternative; that is, if the insured had no knowledge of the default of the premium and did not know that he was drawing his entire wages from the city of Tulsa. then the verdict of the jury should be for the plaintiff.

The law, as indicated by the decisions hereinbefore cited, that under such a set of circumstances liability will pursue and follow a policy after nonpayment of premiums thereon, in the absence of knowledge of such nonpayment on the part of the insured, the question of knowledge, where disputed on the part of the insured, would be a question for the jury, to be submitted under proper instructions, such as instructions Nos. 2 and 3, and to follow the contention of the defendant would be requiring the court to invade the province of the jury and determine a question of fact.

Instruction No. 4, complained of by the defendant, merely instructed the jury that if the insured knew, or in the exercise of reasonable care should have known, that all of his wages were drawn from the hands of the city of Tulsa, not leaving a sum sufficient for the payment of the premium, it would not be necessary for the insurer to notify the insured of a lapse of the policy.

This was a proper question to be submitted to the jury, and more favorable to the defendant than to the plaintiff, especially considering the portion of the insurance contract referring to notification of the insured when premiums were no longer to be remitted through insured's employer.

Under the rule of law requiring all instructions to be considered together, and fur-

ther considering the fact that the jury was instructed in the case at bar not to single out any particular instruction, but to consider them all as a whole in arriving at their verdict, and considering the further fact that instruction No. 1 places the burden of proof upon the plaintiff to prove all questions of fact submitted, and requires that such questions of fact be proved by a preponderance of the evidence, the instructions were very favorable to the defendant, especially in view of the rule of law laid down in Beets v. Inter-Ocean Casualty Co., supra, wherein it was held that the burden of proof was upon the insurer to show that the insured knew that he was receiving payment in full of all wages earned. The trial court in the case at bar placed the burden of proof upon the beneficiary of the insured to show that insured had no knowledge that sufficient moneys were not left in the hands of the city to pay the premium on his policy. Defendant will not be heard to complain of instructions which are more favorable to it than warranted by law.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, WELCH, and PHELPS, JJ., concur. GIBSON, J., dissents.