## VORIS v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN.

### No. 2531.

District Court, N. D. Oklahoma.
March 6, 1939.

D. F. Rainey and Donald F. McMahon, both of Tulsa, Okl., for plaintiff.

Green & Farmer, of Tulsa, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

Defendant, by two separate group insurance policies, insured employees of the Barnsdall Corporation, and its "associated and operated companies"—one of which being the Barnsdall Oil Company. Plaintiff, as an employee of the Barnsdall Oil Company, was issued a certificate of insurance under each of these policies; the certificate under one policy being dated June 1, 1920, and that under the other, September 1, 1926. The policies were procured from defendant by the Barnsdall Company as a part of an insurance program devised by the company for its employees. Under the first issued policy the oil company contracted to pay the entire premium without cost to the employees, such payments being treated as additional compensation to the employees for the following expected considerations as expressed by the company management in connection with the certificates of insurance issued to the employees: "We expect you to pay for it by giving us greater loyalty and cooperation, by working to prevent waste, and by making your services with us continuous and permanent." The last issued policy was known as a "contributory" policy, as both the oil company and each insured employee contributed toward the payment of premiums; the practice being for the company to pay the entire premium to defendant as it had contracted to do, and to deduct from the wage of each insured employee a proportionate part of the premuim cost. The insured employees had nothing to do with the remittance of premiums to the defendant insurer under either of the policies.

Each of the policies provided for stipulated benefits payable to an employee in case of his total and permanent disability occurring before the age of sixty years, and plaintiff's action here is to recover such disability benefits in the amounts named in his respective certificates.

In both policies there was a provision that the insurance as to any employee should terminate when he ceased to be employed by the Barnsdall. Defendant asserts that it has no liability to plaintiff under either of the policies for the reason that plaintiff had been discharged from the service of the oil company, and his insurance coverage under the policies terminated, prior to the occurrence of his disability.

That plaintiff has suffered total and permanent disability as defined by the policies is not controverted. Neither is it disputed that plaintiff entered the employment of the oil company prior to the issuance of the first of the above described policies, and continuously so remained until September 30, 1934. Defendant contends, however, that the oil company discharged plaintiff as of the last named date from his position in the "Gasoline Department" of the company, and that he was re-employed by the company in its "Production Department" in a different locality in January, 1935, with the status of a new employee so far as insurance, service and pension were concerned, and that beginning with April 1, 1935, and continuing until March 2, 1936, plaintiff had no status as an employee of any kind, and that payments to him by the company of $25 per month during this period were made simply as a gratuity.

It is the position of plaintiff that he was at all the times aforesaid in the employment of the oil company; that he understood his insurance was being kept in force by his employer under the practice of premium payments heretofore mentioned, and that he never, at any time, received any notice from either the Barnsdall or the defendant of any discontinuance of premium payments for him, or of the cancellation of either of the policies as to him; therefore, his disability having occurred while still in the service of the

Barnsdall, he is entitled to recover from the defendant the stipulated benefits under both policies for total permanent disability.

The evidence is clear that plaintiff was carried as an insured under both policies from the dates of his respective certificates, with the Barnsdall remitting the necessary premiums to defendant until September 30, 1934. Thereafter, no further payments of premium were made for plaintiff by the Barnsdall on either policy, and no premiums paid for him at all on the first issued policy. However, for the last quarter of the year 1934, plaintiff paid to one Odell, an agent of the oil company who handled the collection and remittance of premiums, plaintiff's share of the quarter annual premium due on the "contributory" policy. It appears at the time plaintiff made this payment to Odell he was temporarily off duty as an employee of the company because of a surgical operation and illness. This was the last payment of premium made under this policy so far as concerns plaintiff. Odell testified that it was the practice of the Barnsdall to send to defendant on the first day of each month what was called an application list, listing thereon the employees who had become eligible for insurance during the previous month, and also listing those employees who had been dropped during the same period, and that on such list of date October 1, 1934, he (Odell) reported the plaintiff as having left the service of the oil company as of September 30, 1934, but, after learning that plaintiff was working for the company during the month of October, 1934, he wrote the New York office of Barnsdall to continue plaintiff's insurance until October 30, 1934. Odell also testified that the "contributory" policy in its entirety was cancelled as of September 30, 1934, and a new policy in lieu thereof taken out by the Barnsdall with defendant, but that plaintiff was not included as an insured under the new policy.

The exact date plaintiff became totally and permanently disabled cannot be fixed, but was sometime shortly after he had returned from east Texas where he had been sent by the oil company, and where he worked for it from the latter part of January, 1935, until February 20 of the same year. At any rate, it can be said that the evidence discloses that such disability occurred sometime prior to March 2, 1936.

Without reference to specific dates, it is clear that the oil company attempted to cancel the insurance of plaintiff under both policies prior to the date of plaintiff's disability by giving notice to defendant that plaintiff was not to be carried as an insured employee. However, it is equally clear that neither defendant nor Barnsdall ever gave plaintiff any notice of default in payment of premiums under either of these policies, or any notice that plaintiff's insurance thereunder had been terminated. On the other hand, plaintiff testified that after he returned from east Texas, and the company began the $25 per month payments to him, he inquired of Odell—who, as before stated, appeared to be in charge of the insurance handling for Barnsdall—concerning his insurance, and that Odell assured plaintiff that his insurance was being taken care of and it was not necessary for plaintiff to bother himself about it.

It is not difficult under the evidence to find that plaintiff was in the employment of the oil company at the time of the occurrence of his disability. The Barnsdall checks of $25 per month issued to plaintiff after April 1, 1935, were marked "for services rendered". In the face of such notation, it cannot be considered that these payments were merely a gratuity on the part of the company. It is true that as wages, such amounts were very small, but the plaintiff was in such physical condition that he could render very little service. While witness Schlosser, a Barnsdall superintendent in the "Gasoline Department", under whom plaintiff worked, testified that he discharged plaintiff in September, 1934, without giving him a transfer to any other department, which fact defendant claims terminated the insurance eligibility of plaintiff under these policies, yet it is unquestioned that by direction of Odell, in charge of the insurance, plaintiff was carried as an insured to October 30, 1934, admittedly for the reason that plaintiff was working for the company during October, and consequently an insurance eligible. The mere fact that plaintiff was out of service for a short time because of illness, and then in January, 1935, began working in a different department of the company to that in which he had been previously employed at a different salary, certainly should not

as a matter of either law or abstract justice destroy the continuity of his employment or his status as an insurance eligible under the policies.

Plaintiff contends that the facts and circumstances in evidence as to the procurement and handling of this insurance constituted the Barnsdall company the agent of defendant by force of Sec. 10514, O.S.1931, 36 Okl.St.Ann. § 197, and consequently all dealings and transactions between Barnsdall and plaintiff with reference to the insurance are binding on defendant. Defendant argues vigorously to the contrary. Plaintiff further contends that, irrespective of the existence of a relationship of principal and agent between defendant and Barnsdall, by reason of the course of conduct pursued by all the parties in connection with these policies, and the payment of premiums thereunder, over such long periods of time as shown by the evidence, the defendant is estopped to assert that Barnsdall was not acting as its agent, and also estopped to assert that either of the policies was cancelled, or forfeited for non-payment of premiums prior to the time plaintiff's disability occurred.

■ As to the question of an actual agency, I have heretofore held, and am still committed to such view, that an employer who procures the insurance and pays the insurer the premiums under such character of insurance and such system of handling as shown in this case is by virtue of the above cited statute made the agent of the insurer. See opinion, filed December 20, 1938, Shanks v. Travelers' Insurance Company, D.C., 25 F.Supp. 740. Because of my holding in the Shanks case where the insurance was procured and handled in much the same manner as in the instant case, and also for the reason that the actual existence of the relation of principal and agent between defendant and the Barnsdall is not deemed a decisive factor in this case, it is not necessary to elaborate the question of agency.

■ On the question of estoppel, plaintiff relies largely upon the decision of the Supreme Court of Oklahoma in the case of Equitable Life Assurance Society v. Davis, 177 Okl. 196, 58 P.2d 542, 545. There, the plaintiff sued as the beneficiary upon the death of insured under a life insurance policy. The insured was an employee of the City of Tulsa, and the premiums were by arrangement of the parties to be remitted by the employer to the insurer and deducted from the wages of the insured. The employer, under such arrangement, remitted premiums for a period of eighteen months, but failed to remit for the premium due May 10, 1932. The insured died July 10, 1932. The insurer defended on the ground of nonpayment of premiums, and the court held under the facts and circumstances the insurer was estopped from asserting such defense. In its opinion the court said:

"A regular course of proceedings had been followed by all parties concerned for eighteen months before any default was made in the premium payments on insured's policy. The insured herein is not chargeable with such neglect or lack of care as is brought about by a change of city administration or by the negligence of insurer's employees and the solicitor of insured's policy in failing to properly remit the premiums on this policy. Insured would be presumed to rely on the course of proceedings long established, and naturally would expect that his premium payments would be made as usual. Where any course of proceedings is followed in the payment of premiums, a divergence from a course of proceedings by the insurer, without notifying the insured, will estop the insurer from defending a suit on the policy for nonpayment of premiums.

"In the case of McCorkle v. Texas Benevolent Association (1888) 71 Tex. 149, 8 S.W. 516, 519, the court stated this rule, as follows:

" 'Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that by conformity thereto his policy will not be forfeited, followed by due conformity on his part, will and ought to estop the company from insisting upon a forfeiture, though it might be plain under the express letter of the contract.'

"True, it might be said that it was not incumbent upon the insured's employer, the city of Tulsa, nor the solicitor of the insurance policy here sued on, Pearl Wilson, to either jointly or severally supervise, manage, and in every way bring about the payment of premiums on insured's policy, but having once undertaken to act in insured's behalf in this regard, and all parties having led insured to rely

upon a continuance of such a course of action, they cannot, without warning or notice, discontinue making such payments, to the detriment of the insured or the beneficiary in this policy. Once having undertaken the task, they must perform it diligently, well, and without neglect, just as a man is not obliged to enter a position of peril to save another, but having done so, he is not to be permitted to bring the person out of the perilous position, and then allow him to perish through negligence."

A careful study of the above cited case indicates that it is decisive here. Take the situation as to the earlier policy here on which plaintiff claims a recovery of $2,000. We find that Barnsdall was to pay the entire premium, and manifestly plaintiff could not know that the premiums were not being paid according to the requirements of the policy without receiving information to that effect from either defendant or Barnsdall. No notice was ever given him by either. And where neither his employer nor the insurer ever undertook to give him any notice of any change of conditions and that he was no longer under the protection of the policy, did he not have a right to assume, after the many years of carrying this insurance for him by his employer, and the issuance to him of eight successive yearly riders increasing the insurance $100 each year until it reached the maximum allowable of $2,000, that the employer was still keeping up premium payments for him and that he was still insured? Moreover, the certificate issued to him under this policy had a provision that plaintiff should receive 90 days' notice of its cancellation.

As to the "contributory" policy, while the plaintiff's position is not quite so strong, yet it would seem to follow from the holding in the Davis case that plaintiff here had the right to rely on no change of conditions as to that policy without notice to the contrary, and none was given. The fact that plaintiff may have drawn all his wages under the last arrangement with the oil company cannot affect the legal result, since it was not shown that plaintiff knew he was being paid the full amount of his earned wages without any deduction being made to take care of the premium. The burden was on the insurer to establish this fact if it existed as was held in Beets v. Inter-Ocean Casualty Co., 159 Tenn. 564, 20 S.W.2d 1040, cited in the Davis opinion.

It seems to me that the Davis case is sound in principle, but if it were not, I am obliged to follow same. There is, however, respectable authority to support it. In addition to the Beets case and McCorkle v. Texas Benevolent Association, supra, the Davis opinion cites the following: Cotten v. Fidelity & C. Co., C.C., 41 F. 506; Moore v. Globe Indemnity Co., Manitoba, 36 D.L.R. 489; Johnson v. Standard Life & Accident Insurance Co., Tex.Civ.App., 97 S.W. 831. Other supporting cases cited by counsel are: All States Life Insurance Company v. Tillman, 226 Ala. 245, 146 So. 393; McDaniel v. Continental Casualty Co., 240 Ill.App. 535; Somog v. West Virginia & Kentucky Insurance Agency, 110 W.Va. 205, 157 S.E. 400; Deese v. Travellers' Insurance Co., 204 N.C. 214, 167 S.E. 797; Pacific Mutual Life Insurance Co. v. McDowell, 42 Okl. 300, 141 P. 273, L.R.A.1918E, 391.

Comment might be made upon other authorities, but I deem it un-necessary. It is sufficient to say that I think the law supports the contention of plaintiff that the defendant is estopped to make the defense that the policies were forfeited or terminated, after the long reliance in each instance by plaintiff upon a course of conduct by all parties which assuredly gave him the right to assume its continuance and his protection under the policies until he had been otherwise notified.

Accordingly, judgment will be rendered for plaintiff upon both policies for the amounts sued for, with interest from March 1, 1936, and a journal entry may be submitted in consonance herewith.