STEPHEN EMERICK *vs.* THE CONNECTICUT GENERAL LIFE INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 2d—decided June 4th, 1935.

*Morton E. Cole,* with whom, on the brief, was *Cyril Cole,* for the appellant (plaintiff).

*C. H. Voorhees,* for the appellee (defendant).

MALTBIE, C. J.  The defendant, hereinafter called the company, issued to the Pratt & Whitney Company, of Hartford, hereinafter called the employer, a policy which is entitled "co-operative insurance policy," the insurance under which was of the type known as "group insurance."  The policy was indorsed as "issued to Pratt & Whitney Company."  In it the company agreed, upon receipt of proof of permanent disability or death of any employee, to pay the sum of $1000, such payment in case of total disability to be made to the employee or someone representing him and in case of death, to a "beneficiary named by the insured employee and entered on the registration card filed with the Company," or if there be no beneficiary so named, then to certain persons designated in the policy.  Every employee who had completed three months of continuous active service was eligible under the policy and became entitled to its benefits "upon completion of any form selected by the Employer indicating his willingness to contribute toward

the insurance." If thereafter he cancelled his insurance, it was to cease as of the first payroll deduction day following the date of cancellation. The employer was to furnish the company with the names of all employees insured and of all those whose insurance ceased "through termination of employment or otherwise, together with the data necessary to determine the premium hereunder." The insurance on any employee was to "automatically cease with the termination of employment." If an employee was totally disabled as defined in the policy, or was temporarily absent, or temporarily laid off, or was given leave of absence, "the employment need not be considered terminated, provided the Company is so notified." The premium for the policy was to be paid by the employer annually in advance, the amount to be determined in accordance with a certain schedule which stated the sum to be paid on account of the employees covered by the policy, based upon the attained age of the various "insured," with a provision for adjustment between the company and the employer on account of changes in the roll of those employed who were covered by the policy. It was further provided that the maximum amount that any employee could pay for the insurance was to be sixty cents a month per $1000 of insurance, the balance to be paid by the employer.

The company agreed to issue to the employer for delivery to each employee whose life was insured an individual certificate setting forth a statement as to the insurance protection to which the employee was entitled, and to whom payable, together with the following provisions for obtaining an individual policy at the termination of employment: "At the termination of the employment of any employee for any reason whatsoever the Company will, without further

evidence of insurability, and upon written application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which the employee belongs and to the form and amount of the policy at such employee's then attained age, issue to the employee a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, with equivalent total and permanent disability benefits in an amount not greater than the amount of the employee's protection under this policy at the time of the termination of the employment." Any employee might designate a new beneficiary under the policy by filing with the company a written request for the change on forms provided for that purpose, the change to become effective upon receipt of the request at the home office of the company. No assignment of the policy or insurance under it was to be effectual against the company unless filed at its home office. It was also provided that the policy, with the application of the employer and the individual applications of any of the employees to be insured, copies of which were attached to the policy, should constitute the entire contract between the parties.

The application for the policy made by the employer stated that the portion of the premium paid by each employee insured was to be $7.20 a year; sixty cents was in fact deducted from the amount due each insured upon the monthly payroll of the employer; and while the policy stated that the employer should pay the balance each month, the schedule of premiums in the policy shows that in the case of no employee whose attained age was less than thirty-eight was the premium charged by the company as much as $7.20 a year. On June 17th, 1930, Robert

C. Emerick, a son of the plaintiff, was employed by the Pratt & Whitney Company and was eligible to insurance under the policy. He received a certificate of the company to the effect that it had insured the lives of certain employees of the Pratt & Whitney Company subject to the terms and conditions of the policy. The certificate stated that Emerick was insured under the policy for the sum of $1000 payable in case of his death to the plaintiff; it quoted the provision as to the conversion privilege contained in the policy; and it also stated that the policy expressly provided that the insurance should cease with the termination of the employment or if the payroll deduction order was cancelled, as of the first payroll deduction day following the cancellation.

Emerick was temporarily laid off on or about February 7th, 1931. Thereafter from time to time he called at the factory but was not again actively employed, although he left there his working coat, tools and certain books having to do with his trade as toolmaker and other personal belongings; nor did he thereafter pay anything to the company for insurance. On October 1st the employer removed his name from its payroll because of lack of work, as of the next payroll deduction day, which was October 3d; and on October 28th the employer notified the defendant he had been laid off as of October 1st and that his insurance was to be considered cancelled. No notice of the termination of his employment or of the cancellation of the policy was given to Emerick or the plaintiff. Emerick died on October 23d, 1931. Thereafter proofs of death were filed with the defendant and the plaintiff as beneficiary under the policy demanded the sum of $1000 but the defendant refused to pay it.

The policy falls within the class of contracts made

for the benefit of a third party, differing, however, from most contracts of that nature in that under it the third party, the employee, would be entitled to its benefits only upon the payment of a consideration, and this the company knew. While this might not be sufficient to alter the legal rights created under the contract, it is an element in the situation which is relevant to the construction and effect of the policy. The policy clearly does not use the word "employment" in the sense of a legal contract of employment. It is so drawn as to include employees working under a hiring wholly indefinite as to the term of its continuance; their employment might, therefore, be terminated at any time at their will or that of the employer; and the hiring would not give rise to any contractual obligation, aside from the right to compensation for services actually performed. 1 Williston, Contracts, §§ 37-39. Nor does the contract apply to employees only when they are actually employed from day to day; this is apparent from the provision that if an employee is "temporarily absent, or is temporarily laid off, or is given leave of absence," the employment need not be considered terminated, provided the company was so notified. The word "employment" as used in the phrase "termination of employment" has reference to the position of an employee rather in the nature of a status. Thus in *Perkins* v. *Eagle Lock Co.*, 118 Conn. 658, 174 Atl. 77, we had before us a case in which action was brought upon a certificate of benefit issued by a corporation to its employee, under which a certain payment was to become due to the latter's wife upon his death while "in the employ" of the corporation; and we sustained a judgment for the plaintiff, although the employee had not been engaged in working for the corporation for more than two years and there was an entry upon its rec-

ords made by the corporation four months after he ceased work, that he was "through." We said (p. 663): "It is clear that neither party to this certificate intended such an automatic termination of the relation of employee and employer, but that the word was intended to indicate the status of the holder of the certificate in relation to the company. The word as here used, is intended to indicate a continuous right to the stated benefit until the contract relation is terminated by the withdrawal of the employee or discharge by the employer, with notice to the other party." As the situation presented is one rather of the status of the employee in relation to his employer than of a contract of employment, the right of the employer at any time at its will to discontinue its contractual relationship to the employee is not conclusive that it might to the same extent terminate his status as an employee under the policy.

In construing the contract we are bound to assume that both the employer and the company intended that the contract should operate fairly and justly to the employee and that, in return for his acceptance of its provisions and payment to the employer of the amount deducted from his wages as premiums, he should be assured of the benefits apparently conferred by the policy. One of these benefits was the right given "at the termination of his employment for any reason whatsoever," upon application made to the company within thirty-one days after such termination, to receive from it a policy insuring him as regards his death or total permanent disability. That this was a benefit of very real value is evident because thereby he would be entitled to receive the policy even though at the termination of his employment his physical condition were such that he could not, upon an application then made, secure a policy of in-

surance. If the employer could terminate the status of an employee, who was at the time temporarily laid off or absent on leave, simply by notifying the company that it had done so, without notice to him, he might very likely lose the benefit of the provision enabling him to take out this independent insurance, because the right to do so is limited to thirty-one days after the termination of employment. We cannot assume that either the company or the employer intended so to jeopardize the apparent right given to the employee. In order to make that right one of assured benefit to the employee, knowledge on his part of the termination of his employment would be necessary.

The ultimate question is, what is the meaning of the phrase "termination of employment" as used in the policy. It clearly does not mean the cessation of active employment or the termination of an existing contract of employment. It must mean such a termination of the relationship of employer and employee as will make effective all parts of the insurance contract. Viewing the policy as a whole, in order to make effective all its terms, we must construe the phrase as meaning a termination of which the employee had knowledge or notice. This is not to introduce any novel principle into the law. Thus the revocation of the authority of an agent, even where the principal may revoke it at will, is ineffective as to the agent without notice to him. *Jones* v. *Hodgkins,* 61 Me. 480, 483; 1 Mechem, Agency (2d Ed.) § 624; 1 Clark & Skyles, Agency, § 173. So a guarantor who has given a continuing guaranty may revoke the guaranty but such revocation is ineffective until notice is given. *Gay* v. *Ward,* 67 Conn. 147, 156, 34 Atl. 1025; *Ricketson* v. *Lizotte,* 90 Vt. 386, 98 Atl. 801; 28 C. J. p. 929. It may not be too much to say that, speaking gen-

erally, where two persons occupy a continuing relationship to each other and certain rights or liabilities will come into effect upon the termination of that relationship, neither party can terminate it except with the knowledge of or upon notice to the other.

We are referred by the defendant to the cases of *Beecey* v. *Travelers Ins. Co.,* 267 Mass. 135, 166 N. E. 571; *Colter* v. *Travelers Ins. Co.,* 270 Mass. 424, 170 N. E. 407; *Magee* v. *Equitable Life Assur. Society,* 62 N. D. 614, 244 N. W. 518; *Thull* v. *Equitable Life Assur. Society,* 40 Ohio App. 486, 178 N. E. 850, in which a conclusion differing from that which we have stated was reached, but the opinions in these cases do not seem to us convincing.

We agree with the contention of the company that the employer was not its agent as regards any obligation to give notice of any termination of the employment to the employee. *Duval* v. *Metropolitan Life Ins. Co.,* 82 N. H. 543, 136 Atl. 400. Neither was the employer as regards knowledge of such termination the agent of the employee so that notice would be imputed to him. There could be no termination of the employment under the policy without knowledge or notice of it to the employee. Until it was terminated the employer was obligated to pay the company a premium based upon the continuance of the insurance. The employer could have put an end to its liability for that premium by terminating the employment to the knowledge of or with notice to the employee and informing the company that it had been terminated; but until it was so terminated the employer continued liable for the premium due on account of the insurance.

There is error and the case is remanded with direction to enter judgment for the plaintiff.

In this opinion the other judges concurred.