ETHEL M. LEAVENS *vs.* METROPOLITAN LIFE INSURANCE CO.

Androscoggin.      Opinion, February 16, 1938.

*John G. Marshall,* for plaintiff.
*Skelton & Mahon,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J. This is an action of assumpsit brought by the widow of Irving D. Leavens as beneficiary named in a certificate held by the deceased under a group policy of insurance No. 6371G issued on April 6, 1932, to his employer, the Burnham & Morrill Company of Portland by the Metropolitan Life Insurance Company. The case having been referred under Rule of Court with right of exceptions as to questions of law reserved, comes forward on exceptions to the acceptance of the report in the Superior Court.

Under the terms of the group policy and the certificate issued thereunder, the employee was insured for TWENTY-FIVE HUNDRED dollars payable to the beneficiary of record upon receipt of due notice and proof in writing of the death of the assured while insured and surrender of the certificate. And it was expressly provided that:

"In case of the termination of the employment of the Employee for any reason whatsoever, all of his said insurance

shall immediately cease, but the Employee shall be entitled to
have issued to him by the Company, without evidence of in-
surability, and upon application made to the Company within
thirty-one days after such termination, and upon payment of
the premium applicable to the class of risk to which he be-
longs and to the form and amount of the policy at his then-
attained age (nearest birthday), a policy of Life Insurance
in any one of the forms customarily issued by the Company,
except Term Insurance, in an amount not exceeding the amount
of his protection under the said Group Policy at the time of
such termination."

The group policy contained the following additional clause:

"Lay-off or leave of absence of two (2) months or less shall
not be considered, and retirement on pension shall not be con-
sidered, a termination of employment within the meaning of
this Policy unless notification to the contrary shall have been
given by the Employer to the Company within thirty-one (31)
days after the date when such lay-off, leave of absence or re-
tirement shall have commenced."

The insurance became effective as to the employee only upon his
written application and he was given the right to change the bene-
ficiary named therein at will. Although the employer paid and was
responsible for the premiums, all insured employees were required
to make weekly contributions thereto which were withheld from
their weekly wages or charged to their accounts.

The transcript of the evidence discloses that on February 12,
1936, the decedent Leavens, who had been for several years em-
ployed by Burnham & Morrill Company as an electrician, injured
a finger of his right hand and went home for the rest of the day. He
reported at the factory the following morning, however, and con-
tinued to work regularly until February 17, 1936. On that day,
Leavens' immediate superior, finding him not at work and ap-
parently somewhat under the influence of liquor, advised him to go
home and he left the shop. That afternoon, his wife came to the
plant and was informed and reported to her husband that he was
not discharged but when he felt better and was able could come

back. There is evidence that his injured finger inconvenienced the employee at least until February 24, 1936, but he was at no time fully incapacitated for work. He did not come back, however, and on March 20, 1936 following, died.

On Febuary 29, 1936, the office force of the Burnham & Morrill Company struck the employee's name off the payroll. The clerk in charge of that record inquired of the master mechanic concerning Leavens' absence from his work, received the reply, "Well, as far as I am concerned, he is all through" and upon inquiry was directed by the superintendent to cancel the employee's insurance. This information being communicated to the clerk in charge, Leavens' insurance card was transferred to the inactive file and notice sent to the agent of the insurer that he was discharged as of that date. This notice, however, bore date of March 10, 1936, and presumably was neither made nor sent until that time, and by stipulation made at the trial it was agreed that it reached the insurer on March 13, 1936. As to when it was acted upon at the home office and insurance upon the decedent's life actually cancelled does not appear. We only learn from the record that the premium for the year ending April 6, 1936, including the *pro rata* charge for this employee's coverage, had been already paid in advance, and at some unknown time the employer received a *pro rata* credit for the purported cancellation as of February 29, 1936. It does definitely appear that neither the employee nor anyone in his behalf was ever notified that he had been discharged or that his insurance under the group policy had been cancelled.

Some of the facts incident to this purported termination of the decedent's employment are significant. It had been and continued the invariable practice of the employer to notify all employees when they were discharged and they were usually allowed at least a week's pay thereafter. This the responsible officers and clerks admit was the only case known where a discharge was attempted without the employee being informed and knowing of it. Again, the decedent's work was distributed among other employees already on the payroll and no one was hired to fill his place. It also appears by direct admission that the superintendent of the factory who had actual charge of this man's employment, when as he says he simply

took the decedent's name from the payroll, intended and expected to reinstate him when he came back, at least on assurances that he would not "drink any more on the job."

It is stipulated and not in controversy that the plaintiff in this action is the widow of the deceased employee and the beneficiary named in his certificate, notice and proof of his death were duly made, and the group policy was in full force and effect when he died. The only question in issue is whether the employment of the decedent was terminated and his insurance discontinued at the time of his death.

Upon the facts which have been recited and others in accord therewith found in the evidence, the Referees reported:

"that at the time of the decease of the insured, Irving D. Leavens, he was within the meaning of the terms of the policy, an employee of Burnham & Morrill Company and was entitled to the benefits of the insurance contract, and upon his death as stipulated by the parties, the amount payable to his beneficiary was $2500, with interest from the date of the writ, April 22, 1936, to the date of final judgment, together with costs of court to be taxed by the Clerk."

We are of opinion that the finding was fully warranted and objections filed thereto show no reversible error.

The record leaves no doubt that on February 17, 1936, the deceased employee was expressly given a temporary leave of absence and, accepting his wife's statement as true, through her was given permission to stay home until he felt better. No claim was ever made that he was notified directly or indirectly that this leave of absence was terminated. The striking of his name from the payroll on February 29, 1936, with all attendant facts and circumstances, is susceptible of the inference that it was in fact intended as a layoff rather than a final termination of his employment. Contrary to the contention of counsel for the insurer, there is in this case a very definite question of whether the employee at the time of his death was on a leave of absence, laid off or discharged. That is a question of fact depending upon the intention of the employer as evidenced by all of its servants' acts and declarations. *Zeigler* v. *Equitable Life Assurance Co.*, 219 Iowa, 872, 259 N. W., 769; *Szczygielski* v.

*Travelers Ins. Co.,* (Penna.) 174 A., 662 ; *Ozanich* v. *Metropolitan Life Ins. Co.,* (Penna.) 180 A., 67 ; *Cogsdill* v. *Metropolitan Life Ins. Co.,* 158 S. C., 371, 155 S. E., 747. It can not be held that a finding by the Referees in this case that the employee was on leave of absence or laid off and not discharged when he died, was entirely unsupported by the evidence. If their report can be construed as embodying that finding it is not open to review. *Hawkins* v. *Theaters Co.,* 132 Me., 1, 164 A., 628 ; *Jordan* v. *Hilbert,* 131 Me., 56, 158 A., 853 ; *Hovey* v. *Bell,* 112 Me., 192, 91 A., 844.

Apparently, however, the Referees based their conclusion that there had been no termination of the employment of the deceased in part at least on the failure of the employer to give him notice of his discharge and applied the rule laid down in the somewhat recent case of *Emerick* v. *Connecticut General Life Ins. Co.,* 120 Conn., 60, 179 A., 335, 338, in which in construing a group policy of insurance and the effect of a discharge of an employee without his knowledge, it was held that the phrase "termination of employment" appearing in that policy as in the one here under consideration must be construed as meaning "a termination of which the employee had knowledge or notice." We are convinced that the rule laid down in that case may be safely adopted as the law of this jurisdiction.

The group policy here in controversy, as there, is not a noncontributory contract of insurance taken out by the employer as a gratuity and without cost or expense to the employees. They become insured only upon their written applications which are made a part of the contract, and they pay a portion of the premiums. By the terms of the policy, a right is conferred upon them on termination of their employment to receive, without evidence of insurability on application made within thirty-one days after such termination and payment of appropriate premium, a policy of life insurance, other than term insurance, in the amount of the protection they enjoy under the group policy. This is a real benefit assured to the employee and by no means a negligible item of the consideration for which his premium contributions are paid. To hold that the employer and the insurer executed the insurance contract with the intention that the conversion privilege assured to the employee could be destroyed without his knowledge at the will of

the employer, thus stripping him, it may be, of the power to obtain any life insurance at a time when he is disabled or advanced in years and no longer insurable, is to read into the policy, we think, an unfair and unjust provision which is neither expressed nor necessarily implied. Settled rules require that, in contracts susceptible of two conflicting constructions, that which accords with good faith and fair-dealing between the parties must be adopted. *Brown* v. *Bishop*, 105 Me., 272, 74 A., 724; *Ackley & Co.* v. *Hunter-Benn & Co's. Company*, 166 Ala., 295, 307, 51 So., 964; *Simon* v. *Etgen*, 213 N. Y., 589, 595, 107 N. E., 1066. We, too, are convinced that the inclusion of the conversion privilege such as is found here in a group policy indicates that the makers of the contract intended that the employees insured thereunder should have knowledge of the termination of their employment. This view is supported not only in *Emerick* v. *Connecticut General Life Ins. Co.*, supra, but also in *Ozanich* v. *Metropolitan Life Ins. Co.*, supra.

We are fully aware that in some jurisdictions group insurance policies and certificates issued thereunder apparently have not been so construed. A careful study of the cases cited does not persuade us, however, that they should be followed here. In the main, they are controlled by essentially different facts. In principle, none in point are convincing. The citations include *Colter* v. *Travelers Ins. Co.*, 270 Mass., 424, 170 N. E., 407; *Beecey* v. *Travelers Ins. Co.*, 267 Mass., 135, 166 N. E., 571; *Kowalski* v. *Aetna Life Ins. Co.*, 266 Mass., 255, 165 N. E., 476; *Cutledge* v. *Aetna Life Ins. Co.*, 53 Ga. App., 473, 186 S. E., 208; *Curd* v. *Travelers Ins. Co.*, 51 Ga. App., 306, 180 S. E., 249; *Magee* v. *Equitable Life Ins. Co.*, 62 N. D., 614, 244 N. W., 518; *Thull* v. *Equitable Life Assur. Soc.*, 40 Ohio App., 486, 178 N. E., 850; *Aetna Life Ins. Co.* v. *Lembright*, 32 Ohio App., 10, 166 N. E., 586.

The defendant insurer presses strongly in its brief that the beneficiary's decedent abandoned his employment and showed by his acts that he did not consider himself employed at the time his name was stricken off the payroll. Assuming as we must that this point was raised before the Referees, the record indicates that it was decided in favor of the beneficiary on conflicting evidence. Error in the acceptance of the report can not be predicated here on the finding on that issue.

The defendant insurer makes no point that if the decedent was granted a leave of absence not considered a termination of employment within the meaning of the group policy it was revoked and notice to the contrary given to the insurer within thirty-one days after its commencement. If this were not so, such a claim could not avail the insurer on this review. No objection having been directed to this point at *nisi prius*, it is not open here on this bill of exception. Rule XXI; *Staples* v. *Littlefield*, 132 Me., 91, 167 A., 171.

Being convinced for the reasons stated that no error is shown in the findings or rulings of the Referees to whom this case was submitted, the exceptions to the acceptance of their report are not sustained.

*Exceptions overruled.*