KLAT *v.* CHRYSLER CORP.

1. INSURANCE—GROUP POLICY—TERMINATION OF EMPLOYMENT—PRESUMPTIONS—EVIDENCE.

In action by death beneficiary, named in certificate of insurance issued under group policy under which insured had authorized deduction of $1.45 semi-monthly from his wages and cancellation of his interest in insurance funds upon termination of his employment, wherein plaintiff introduced testimony showing insurance had been issued and became effective on December 18, 1933, that she was the beneficiary named in the certificate, that last day insured worked for employer was March 31, 1934, and that he died the following April 30th at which time the employer owed him $42.30 for wages due April 5th and relied upon presumption of continuance of employment to show status of insured's employment at date of death; the uncontradicted evidence presented by defendant, consisting of original employment record showing that insured was laid off March 31st, cleared April 3d, a "left service" ticket sent from employment to payroll department on April 3d, which indicated request to remove him from payroll, an "employee's earnings record" card which indicated insurance was paid up to and including March 31st with no deductions for payment of insurance premiums thereafter and that employer had not paid for subsequent premiums, original cancellation form made up by employer, dated March 31st and forwarded to insurance department as a request for cancellation of insurance on deceased and others, and deceased's group insurance application showing cancellation as of March 31st and additional testimony to the effect that "layoff" meant termination of employment when employee's services are no longer needed although his ability and conduct is satisfactory, which records were made in the regular course of business, *held*, admissible under 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935, and sufficient to overcome presumption relied upon by plaintiff.

2. EVIDENCE—REBUTTABLE PRESUMPTIONS.

A rebuttable or *prima facie* presumption has no weight as evidence and serves only to establish a *prima facie* case, but if challenged by rebutting evidence, supporting evidence must be introduced and it then becomes a question of weighing the actual evidence introduced without giving any evidential force to the presumption itself, but how much evidence shall be required from the other party to meet, overcome or destroy such a presumption is determined by no fixed rule.

3. SAME—PRESUMPTIONS OVERCOME BY DISTINCT AND POSITIVE TESTIMONY.

The distinct and positive testimony to a fact by unimpeached and uncontradicted witnesses should be credited and have the effect of overcoming a mere presumption.

4. SAME—UNCONTROVERTED EVIDENCE—DIRECTION TO JURY.

When all the evidence upon the point, on both sides, tends clearly to prove and, if true, does prove a fact, and there is none to cast a doubt upon it, such fact may, and generally should, be assumed as proved; and the jury should be told that there is no evidence from which they can find against the fact as proved.

5. INSURANCE—GROUP POLICY—TERMINATION OF EMPLOYMENT—PRESUMPTIONS—EVIDENCE—REBUTTAL—DIRECTED VERDICT.

Failure of plaintiff in action under group insurance policy to proceed with rebuttal evidence after defendant employer and insurer had presented sufficient uncontradicted evidence to prove that there was a termination of employment which overcame presumption of continuous employment made it incumbent upon trial judge as a matter of law to direct a verdict in favor of defendants.

6. SAME—GROUP POLICY—STATUS OF EMPLOYMENT—NOTICE.

Under group insurance policy not providing that notice of termination of employment be given to an employee, the failure to give such notice to employee does not prevent termination of coverage upon termination of employment where insurance automatically ceased upon termination of employment due to layoff, it being the duty of the employee insured to ascertain the status of his employment at all times.

MCALLISTER, J., dissenting.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 11, 1938. (Docket No. 88, Calendar No. 39,702.) Decided June 30, 1938.

Action by Elizabeth Klat against Chrysler Corporation, a Delaware corporation, and Ætna Life Insurance Company, a foreign corporation, on a group life insurance policy for sums due. Verdict on special question for plaintiff. Judgment for defendants *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Koscinski, Kaminski, Poleski & Wojcinski,* for plaintiff.

*Butzel, Eamon, Long, Gust & Bills (Clifford Van Blarcom,* of counsel), for defendants.

SHARPE, J. In April, 1929, the Chrysler Corporation entered into an agreement with the Ætna Life Insurance Company, of Hartford, Connecticut, for a policy of group life insurance. The policy of insurance issued provided among other things that the insurance upon the life of each employee was to cease automatically upon:

1. The employee's failure to make a certain required premium contribution;

2. The termination of his employment; or

3. The cancellation of his insurance by the Chrysler Corporation in cases of temporary layoff.

In November, 1933, Frank Dembeck made application for insurance under the plan above noted. He requested that the insurance, in case of death, be made payable to his aunt Elizabeth Klat, plaintiff herein, and authorized the deduction of $1.45 semimonthly from his wages in consideration of the issuance of the insurance and the cancellation of his in-

terest in the insurance funds upon the termination of his employment. Dembeck worked for the Chrysler Corporation to and including March 31, 1934, when he was "laid off" on account of a general reduction of force. Dembeck died April 30, 1934. At the time of his death, the company owed him $42.30 for wages which were due for the pay period ending April 5, 1934.

Elizabeth Klat, plaintiff herein and beneficiary named in the insurance policy, brought action for the same against the Chrysler Corporation and the insurance company. The defendants filed an answer and pleaded that Dembeck's employment had terminated on March 31, 1934; and that his insurance had been cancelled prior to his death.

When the cause came on for trial, plaintiff's testimony was limited to a showing (1) that the insurance above referred to had been issued and became effective on December 18, 1933; (2) that she was the beneficiary named in the application signed by Mr. Dembeck and the insurance certificate thereafter delivered to him; (3) that the last day Mr. Dembeck worked at the Chrysler plant was March 31, 1934; and (4) that he died the following April 30th.

The defendants thereupon introduced the following documentary evidence: the original employment record of Dembeck which indicated that he was "laid off" March 31, 1934, and "cleared" April 3, 1934; a so-called "left service ticket" for Dembeck sent by the employment department to the payroll department dated April 3, 1934, 2 p. m., which indicated a request to remove the man from the pay roll; and "employee's earnings record" card kept by the Chrysler Corporation which indicated that defendant's insurance was paid up to and including March 31, 1934, with no deductions for the payment

of insurance premiums after March 31, 1934, and that no moneys were paid to the Chrysler Corporation for the purpose of paying these premiums after March 31, 1934; the original "cancellation form" made up by the Chrysler Corporation, dated March 31, 1934, and forwarded to the insurance department as a request for the cancellation of insurance on a large number of employees carrying coverage according to the master policy, Mr. Dembeck's name was on this list; and Mr. Dembeck's "group insurance application" with a stamp upon it "Canc. Mar. 31, 1934." Many of the entries appearing upon the above exhibits were not made in the handwriting of the witnesses who identified the same, but were admitted as evidence under 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 14207, Stat. Ann. § 27.902). The defendants made a motion for a directed verdict at the close of their proofs. The trial court reserved decision on the motion and submitted the following question to the jury, "Had the employment of Frank Dembeck been terminated prior to his death on April 30, 1934?" The jury answered the question in the negative. The defendants then filed a motion for judgment *non obstante veredicto* which was granted. Plaintiff appeals.

The principal question in this case relates to the termination of Dembeck's employment. The master policy provides as follows:

"Individual terminations: The insurance of any employee shall automatically cease when the employee fails to make the required premium contribution, or upon termination of employment; except that if any employee is absent on account of sickness or injury, temporarily laid off, granted leave of absence, pensioned or retired, his insurance shall continue until it is terminated by the employer."

In the trial of the cause plaintiff relied upon the presumption of the continuance of employment and offered no evidence to show the status of Dembeck's employment with the Chrysler Corporation at the date of his death. Defendants offered in evidence the above mentioned exhibits as proof that employment had terminated; and, in addition, offered testimony to the effect that under their method of operation the word "discharged" is used by the company when employment is terminated due to some act on the part of the employee which makes him an undesirable employee; the term "layoff" denotes a termination of employment when the services of the employee are no longer needed although his ability and conduct is satisfactory; and "temporary layoff" does not indicate a termination of employment, but does mean a temporary layoff, in such case the foreman does not send any notice to the employment department as is done in either of the other classes of *layoff*. ·The evidence offered by defendants was admissible under 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 14207, Stat. Ann. § 27.902). The records so admitted were made during the regular course of business of the Chrysler Corporation. Such evidence was sufficient to overcome the presumption relied upon by plaintiff.

In *Gillett* v. *Michigan United Traction Co.*, 205 Mich. 410, 414, we said:

"It is now quite generally held by the courts that a rebuttable or *prima facie* presumption has no weight as evidence. It serves to establish a *prima facie* case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual

evidence introduced, without giving any evidential force to the presumption itself."

In *Rousseau* v. *Brotherhood of American Yeomen,* 186 Mich. 101, we said:

"In Eliott on Evidence (1st Ed.), p. 116, § 93, the following conclusion is reached by the author:

" 'A presumption operates to relieve the party in whose favor it operates from going forward in argument or evidence, and serves the purposes of a *prima facie* case until the other party has gone forward with his evidence; but, in itself, it is not evidence, and involves no rule as to the weight of evidence necessary to meet it. How much evidence shall be required from the other party to meet, overcome, or destroy the presumption is determined by no fixed rule.' "

In *Union Trust Co.* v. *American Commercial Car Co.,* 219 Mich. 557, we said, "Presumptions lose all force and application when specific facts are shown."

Plaintiff contends that the weight to be given to the evidence presented by defendant was a matter for the determination of a jury. We do not think so.

In *Christiansen* v. *Hilber,* 282 Mich. 403, we said, quoting *Union Trust Co.* v. *American Commercial Car Co., supra,*

" 'It would have been an idle ceremony, under the evidence, to have submitted the case to the jury, for the direct, positive and uncontradicted evidence presented an issue of law for the court and not an issue of fact for the jury.' * * *

"It is the general rule that 'where unimpeached witnesses testify distinctly and positively to a fact, and are uncontradicted, their testimony should be credited, and have the effect of overcoming a mere presumption.' *Elwood* v. *Western Union Telegraph Co.,* 45 N. Y. 549 (6 Am. Rep. 140); *Barr* v. *Guelph Patent Cask Co.,* 129 Mich. 278. * * *

" 'When all the evidence upon the point, on both sides, tends clearly to prove, and, if true, does prove a fact, and there is none to cast a doubt upon it, such fact may, and generally should be, *assumed as proved*; and the jury should be told that there is no evidence from which they can find against the fact as proved.' *Druse* v. *Wheeler,* 26 Mich. 189, 195."

In the case at bar the testimony introduced by defendants was not contradicted, nor is it inherently improbable. It showed that an entry was made upon Dembeck's employment card to the effect that he had been laid off owing to a reduction in force; that his record was cleared April 3, 1934; that the "left service ticket" to the paymaster requested that Dembeck's name be removed from the payroll and that his pay was made up for the pay of April 5, 1934; that during the early part of April, 1934, Dembeck's insurance was cancelled; and that nothing was paid on Dembeck's insurance subsequent to March 31, 1934.

We are constrained to hold the above uncontradicted evidence was sufficient to prove that there was a termination of employment and overcame the presumption of continuous employment relied upon by plaintiff. The failure of plaintiff to proceed with rebuttal evidence made it incumbent upon the trial judge as a matter of law to direct a verdict in favor of defendants. *Lendberg* v. *Brotherton Iron Mining Co.*, 75 Mich. 84.

Plaintiff contends that knowledge of termination of employment was not brought to the attention of plaintiff's decedent. It is sufficient to say that the policy of insurance does not provide that such notice shall be given to the employee and we may not read into the contract terms not agreed upon by the parties. Under the terms of this contract it becomes the duty of the employee to ascertain the status of his employment at all times.

The judgment *non obstante veredicto* is affirmed; defendants may recover costs.

Wiest, C. J., and Butzel, Bushnell, Potter, Chandler, and North, JJ., concurred with Sharpe, J.

McALLISTER, J. (*dissenting*). Plaintiff's decedent, Frank Dembeck, an employee of the Chrysler Corporation, made application for life insurance under a group insurance policy in which the Ætna Life Insurance Company was the insurer. The master policy issued by the insurance company to Chrysler Corporation provided that in case the employee were temporarily laid off, his insurance should continue until terminated by the employer. It further provided that the insurance should automatically cease when the employee failed to make payment of premiums and in case of termination of employment. With regard to the latter, the policy provided that "in case of termination of employment for any reason whatsoever," the employee shall be entitled to have a policy of life insurance issued to him by the company without further evidence of insurability.

Dembeck made application for such insurance November 18, 1933, and in his application authorized the cancellation of his interest in the insurance upon termination of his employment by causes other than death or sickness. Upon the acceptance of his application, a certificate was issued to Dembeck including a provision that "This insurance terminates whenever said member ceases to be an employee of the Chrysler Corporation."

A further provision sets forth that "In case of termination of employment for any reason whatsoever the member shall be entitled to have issued to him by the Ætna Life Insurance Company without further evidence of insurability a policy of life insurance" on certain conditions similar to those of ordinary life insurance policies.

Dembeck was "laid off" by the Chrysler Corporation on March 31, 1934. He died about a month later.

At the time of his death, the corporation owed him wages due for the pay period ending April 5, 1934.

Plaintiff herein, the beneficiary under said policy of insurance, brought suit to recover under the terms of the policy. The defense was made in the lower court that at the time of Dembeck's death, his employment had terminated with Chrysler Corporation and that, therefore, according to the terms of the policy, such insurance was not in effect at the time of his death. The court submitted to the jury a special question as to whether there had been a termination of employment which the jury answered negatively. The court, under the Empson act (3 Comp. Laws 1929, § 14531 [Stat. Ann. § 27.1461]), entered judgment of no cause of action notwithstanding the verdict on the ground that under the uncontradicted testimony Dembeck's employment had terminated before his death and at that time the insurance was not in effect.

The principal question in the case is whether, under the facts, the employment of deceased had terminated prior to his death.

When employees are discharged for cause by the Chrysler Corporation, they are required to turn in their tools, tool checks and badge of the corporation. When they are "laid off," it is the practice of workmen to leave their tools and clothes at the factory and they are permitted by the corporation to retain their badges in the expectation that in a short time they will be called back to work.

According to the "employment record" of the corporation, there is a distinction made between a discharge and a layoff; and the company uses a certain symbol in its records to indicate a discharge and another to indicate a layoff. According to these records which were introduced in evidence, the de-

ceased was not discharged, but laid off. A discharge would be a termination of employment; but a layoff does not necessarily mean that such employment was terminated. This distinction is again seen in the terms of the master policy where it is provided that although termination of employment results automatically in cancellation of insurance, a temporary layoff does not, in itself, cancel the insurance. On the contrary, it is specifically provided that in case of a temporary layoff, the insurance will continue until it is terminated by the employer.

There is, therefore, a difference between "termination of employment" and a "temporary layoff." There is a further distinction between a "discharge" and a "layoff" as the terms are used by the defendants themselves in their contracts and records.

It is admitted that defendants gave no notice to deceased that they had terminated his insurance, but it is contended that the evidence of certain records of the Chrysler Corporation, introduced in evidence, of which deceased had no notice, constituted a termination of the employment of deceased. A witness for defendants testified that the symbol, "laid off," used in the company records with reference to deceased indicated a permanent layoff, for the reason that it was not the practice of the company to make a record of a temporary layoff. Plaintiff, however, is not bound by this testimony and the jury may ignore it if it sees fit. Such evidence is in the nature of self-serving statements. The jury could have concluded that the layoff was temporary and if they had so determined, the insurance policy, according to its terms, would have continued until terminated by defendant; and there was no evidence of such termination of insurance.

In *Peters* v. *Ætna Life Ins. Co. of Hartford, Conn.,* 279 Mich. 663, the court, in passing upon the question of termination of employment under a policy of insurance similar to the one before us, said:

"It is evident that 'termination of employment' within the terms of the policy means something more than that the employee ceased to work and the employer to pay him. Such a situation ordinarily would exist in case of sickness, injury, layoff, or leave of absence, during which, by its express terms, the policy nevertheless continued in force. The clause must mean a complete severance of the relationship of employer and employee by positive act on the part of either or both. In the absence of conclusive evidence, the character of the cessation of work must be found from the attendant circumstances. *Powell* v. *Equitable Life Assur. Society of the United States,* 173 S. C. 50 (174 S. E. 649); *Zeigler* v. *Equitable Life Assur. Society,* 219 Iowa, 872 (259 N. W. 769); *Ozanich* v. *Metropolitan Life Ins. Co.,* 119 Pa. Super. 52 (180 Atl. 67, 576)."

In *Emerick* v. *Connecticut General Life Ins. Co.,* 120 Conn. 60 (179 Atl. 335, 105 A. L. R. 413), the court in passing upon the legal effect of a policy similar to the one before us, said:

"The policy falls within the class of contracts made for the benefit of a third party, differing, however, from most contracts of that nature in that under it the third party, the employee, would be entitled to its benefits only upon the payment of a consideration, and this the company knew. While this might not be sufficient to alter the legal rights created under the contract, it is an element in the situation which is relevant to the construction and effect of the policy. The policy clearly does not use the word 'employment' in the sense of a legal con-

tract of employment. It is so drawn as to include employees working under a hiring wholly indefinite as to the term of its continuance; their employment might, therefore, be terminated at any time at their will or that of the employer; and the hiring would not give rise to any contractual obligation, aside from the right to compensation for services actually performed. 1 Williston, Contracts, §§ 37–39. Nor does the contract apply to employees only when they are actually employed from day to day; this is apparent from the provision that if an employee is 'temporarily absent, or is temporarily laid off, or is given leave of absence,' the employment need not be considered terminated, provided the company was so notified. The word 'employment' as used in the phrase 'termination of employment' has reference to the position of an employee rather in the nature of a status. Thus in *Perkins* v. *Eagle Lock Co.*, 118 Conn. 658 (174 Atl. 77), we had before us a case in which action was brought upon a certificate of benefit issued by a corporation to its employee, under which a certain payment was to become due to the latter's wife upon his death while 'in the employ' of the corporation; and we sustained a judgment for the plaintiff, although the employee had not been engaged in working for the corporation for more than two years and there was an entry upon its records made by the corporation four months after he ceased work, that he was 'through.' We said (p. 663): 'It is clear that neither party to this certificate intended such an automatic termination of the relation of employee and employer, but that the word was intended to indicate the status of the holder of the certificate in relation to the company. The word as here used, is intended to indicate a continuous right to the stated benefit until the contract relation is terminated by the withdrawal of the employee or discharge by the employer, with notice to the other party.' As the situation presented is one rather of the status of the employee in relation to his em-

ployer than of a contract of employment, the right of the employer at any time at its will to discontinue its contractual relationship to the employee is not conclusive that it might to the same extent terminate his status as an employee under the policy.

"In construing the contract we are bound to assume that both the employer and the company intended that the contract should operate fairly and justly to the employee and that, in return for his acceptance of its provisions and payment to the employer of the amount deducted from his wages as premiums, he should be assured of the benefits apparently conferred by the policy. One of these benefits was the right given 'at the termination of his employment for any reason whatsoever,' upon application made to the company within 31 days after such termination, to receive from it a policy insuring him as regards his death or total permanent disability. That this was a benefit of very real value is evident because thereby he would be entitled to receive the policy even though at the termination of his employment his physical condition were such that he could not, upon an application then made, secure a policy of insurance. If the employer could terminate the status of an employee, who was at the time temporarily laid off or absent on leave, simply by notifying the company that it had done so, without notice to him, he might very likely lose the benefit of the provision enabling him to take out this independent insurance, because the right to do so is limited to 31 days after the termination of employment. We cannot assume that either the company or the employer intended so to jeopardize the apparent right given to the employee. In order to make that right one of assured benefit to the employee, knowledge on his part of the termination of his employment would be necessary.

"The ultimate question is, what is the meaning of the phrase 'termination of employment' as used

in the policy. It clearly does not mean the cessation of active employment or the termination of an existing contract of employment. It must mean such a termination of the relationship of employer and employee as will make effective all parts of the insurance contract. Viewing the policy as a whole, in order to make effective all its terms, we must construe the phrase as meaning a termination of which the employee had knowledge or notice. This is not to introduce any novel principle into the law. Thus the revocation of the authority of an agent, even where the principal may revoke it at will, is ineffective as to the agent without notice to him. *Jones* v. *Hodgkins,* 61 Me. 480, 483; 1 Mechem, Agency (2d Ed.) p. 446, § 624; 1 Clark & Skyles, Agency, p. 414 *et seq.,* § 173. So a guarantor who has given a continuing guaranty may revoke the guaranty but such revocation is ineffective until notice is given. *Gay* v. *Ward,* 67 Conn. 147, 156 (34 Atl. 1025, 32 A. L. R. 818); *Ricketson* v. *Lizotte,* 90 Vt. 386 (98 Atl. 801); 28 C. J. p. 929. It may not be too much to say that, speaking generally, where two persons occupy a continuing relationship to each other and certain rights or liabilities will come into effect upon the termination of that relationship, neither party can terminate it except with the knowledge of or upon notice to the other.''

In *Ozanich* v. *Metropolitan Life Ins. Co.,* 119 Pa. Super. 52 (180 Atl. 67, 576), the court had under consideration a policy similar to the one in question in this case and held that the clause regarding the issuance of a life insurance policy, on the customary terms, on application of the employee within 31 days of the termination of employment without further evidence of insurability, contemplated notice to the employee of any action terminating employment. The court said:

''The policy and certificate provided that in case of the termination of the insured employee's employ-

ment, for any reason whatever, the insured employee should be entitled to have issued to him by the insurance company, *without evidence of insurability,* and upon application made to the insurance company within 31 days after such termination, and upon payment of the proper premium applicable, a policy of life insurance in any one of the forms customarily issued by such company, except term insurance, in an amount equal to the amount of his insurance under said group policy at the time of such termination.   This clause, while not directly applicable in this case, shows that the policy contemplated notice to the employee, as well as to the insurance company, of any action on the part of the employer terminating his employment.''

It is said in Crawford and Harlan, Group Insurance, p. 103, § 41:

''Considering the status of the employee under the group policy with that of the other parties thereto, a duty of at least giving notice of the cancellation to the employee would seem to rest with the insurer or the employer or both.''

And further:

''Generally it is a question of fact for the jury to determine whether the insured suffered a loss during the time the insurance was in full force and effect.''   p. 104, § 41.

The large social implications in matters involving group insurance should not be overlooked.   Under modern conditions of industry, in many cases, employment has developed from a contractual basis to a status.   Federal statutes provide, in certain cases, that where workmen are on strike, they still retain their character of employees, and such provisions of the statute have recently been held valid by the United States Supreme Court. *National Labor Rela-*

*tions Board* v. *Mackay Radio & Telegraph Co.*, 304
U. S. 333 (58 Sup. Ct. 904).

Viewed from a contractual standpoint, it must
have been intended that notice was to be given the
employee in case of termination of the insurance.
It was provided in express terms that an employee
whose employment had terminated, no matter for
what reason, would be entitled to an ordinary life
insurance policy without further evidence of in-
surability within 31 days of the termination of the
group insurance. The right to secure an ordinary
life insurance policy under such conditions was a
most valuable right to one who could not otherwise,
because of physical condition, avail himself of the
purchase of such insurance. It is a provision in the
group policy for the benefit of the insured. The cost
of premiums in the group insurance and the amount
of contributions of the employee must necessarily be
higher in consideration of this right than they would
be if the insurance were limited merely to the period
of actual employment. It is clearly the intent of the
contract that the employee have this opportunity to
insure himself after termination of the group insur-
ance. He has already paid the consideration for the
exercise of such right. Unless the employee knows
whether, and at what time, the group insurance was
terminated, it is impossible for him to take advantage
of this option. The right to exercise this option
depends entirely upon when the insurance ter-
minates.

The burden of proof that the policy had lapsed
by reason of termination of Dembeck's employment
was on the defendants. *Peters* v. *Ætna Life Ins. Co.
of Hartford, Conn., supra.* This they attempted to
do by introducing certain records of the company
mentioned by my Brother in his opinion. These rec-

ords were introduced by virtue of the provisions of 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 14207, Stat. Ann. § 27.902). The provisions of such act only provide for the admissibility in evidence of such items made in the regular course of business. The statute does not make that proof which is not proof nor does it purport to change the rules of competency or relevancy; it merely provides a method of proof of an admissible act, transaction, occurrence or event. *Kelly* v. *Ford Motor Co.,* 280 Mich. 378. The act specifically provides that all circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight but not its admissibility.

The jury were entitled to give such evidence whatever weight they found proper. While they could not arbitrarily reject such evidence, they could entirely disregard it, if they did not consider it proof of the fact sought to be established. Unless defendants sustained the burden of proving that the employment of deceased had terminated, plaintiff was entitled to recover; and the introduction of the company records in this case relating to cancellation and termination of employment, which facts were not communicated to deceased, did not, as a matter of law, cast the burden of proof upon plaintiff to show that the deceased was still employed at the time of his death. It was error to hold that the mere introduction of such company records was absolute proof of the facts indicated thereby unless rebutted.

On the trial, when it was sought to introduce such company records, together with testimony concerning the meaning and effect of them, plaintiff's counsel objected on the ground that such evidence was

self-serving and incompetent. The court, however, held that the witnesses could testify what the company meant by their own records, but that the weight of such evidence was for the jury and that the question of whether the facts actually were, as entered on the records, was also for the jury. In this regard, on examination of defendants' witness, the following took place:

"*Q.* Was that layoff a permanent layoff or a temporary layoff?

"*Mr. Koscinski:* I object to that as incompetent, irrelevant and immaterial. As your honor has stated, the card speaks for itself.

"*The Court:* I will sustain the objection, unless the witness knows, or unless there is something on the card further to indicate the nature of the layoff.

"*Q.* * * * Is there anything on the card which would indicate to you that this was a permanent or temporary layoff?

"*A.* At the time this particular man was laid off, there was a group of men laid off with him.

"*Mr. Koscinski:* I object to that as incompetent, immaterial and irrelevant, and not answering the question, if the court please.

"*The Court:* Just confine yourself to the question, Mr. Blue. Is there anything on the card that would indicate?

"*A.* Yes. This man, so far as we know, would be permanently laid off.

"*Mr. Koscinski:* Just a minute. I ask that the answer be stricken out as not responsive.

"*The Court:* What indicates it?

"*A.* Due to the fact that it is on the card. If it was a temporary layoff it would not be on the card.

"*Mr. Koscinski:* I believe, if the court please, that is a question for the jury to decide, as to the meaning of whatever writing is on the card, not whatever this witness explains to us what he understands, or what was meant at the factory by someone.

"*The Court:* Well, I think it is not entirely self-explanatory. Where it is ambiguous, they have a right to explain what they mean by their own records. The jury may not agree that the record indicates what they intended it to mean. * * *

"*Q.* * * * Mr. Blue, if there was a temporary layoff, and not a permanent layoff, would that fact appear on the card, which you have before you now?

"*Mr. Koscinski:* I object to that as being self-serving and calling for a conclusion. I think the witness should testify and explain the writing on the card.

*Mr. Van Blarcom:* I think he is entitled to testify what the practice of his office is in respect to these matters.

"*Mr. Koscinski:* They can introduce anything now, if the court please, and I make my objection to a lot of this testimony on the grounds that it is equally within the knowledge of the deceased; the deceased is not here to meet this statement.

"*The Court:* I have overruled you on that, and I have overruled you on your objection made to the corporation record. The old rule that has to do with memoranda is that before one may testify to the memoranda, they must have been made by him personally, or at least under his close supervision. That rule has been expanded in the matter of public records, and it has been expanded in regard to records of each corporation where business has enlarged to the extent that it is no longer possible for one man or one person or a small group of them to conduct the affairs of the business. Now, *that does not mean, however, that the weight and accuracy and authenticity of the record is not a question of fact for the jury.* I think that the witness has a right to testify to the nature of the record; that is, as to why the record is kept and what notations on there mean. *Now, the jury have to agree that the fact is as entered on the card, for example.*"

The jury was not bound by the uncontradicted testimony of defendants' witnesses with regard to the records of the company or the explanation of meaning of such records given by these witnesses as to the termination of employment of deceased. 10 R. C. L. p. 1006; *Barnes* v. *Verry,* 154 Minn. 252 (191 N. W. 589, 31 A. L. R. 707). See, also, 26 R. C. L. p. 1087.

"It is now quite generally held by the courts that a rebuttable or *prima facie* presumption has no weight as evidence. It serves to establish a *prima facie* case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and *it then becomes a question of weighing the actual evidence introduced,* without giving any evidential force to the presumption itself." *Gillett* v. *Michigan United Traction Co.,* 205 Mich. 410, 414.

"If there is room for reasonable doubt, the question must be submitted to the jury. And while the jury, in weighing the evidence, may not consider the presumption, yet *if, uninfluenced by the presumption, they reach the conclusion that the evidence tending to show decedent's negligence is not entitled to credit and should be disregarded, the presumption may then be considered as remaining in force* so far as may be necessary to establish the fact that the deceased exercised proper care in all respects not expressly established by the evidence. It was not entirely displaced, but remained in abeyance pending the jury's reaching this preliminary decision as to the credence to be given the evidence on the particular point in which negligence was claimed." *Gillett* v. *Michigan United Traction Co., supra,* 421 (italics ours).

The question was whether defendants by means of the records of the corporation and the testimony relevant thereto had met the burden of proof by

showing termination of employment; and this was a question for the jury.

There was no contract in this case whereby the Chrysler Corporation agreed to insure plaintiff's decedent. The Ætna Life Insurance Company was the insurer.

In compliance with the special verdict, the judgment *non obstante veredicto* should be set aside and the cause should be remanded to the circuit court for entry of judgment in favor of plaintiff against defendant Ætna Life Insurance Company and for judgment of no cause of action as to the Chrysler Corporation. Plaintiff should recover costs to both courts against the Ætna Life Insurance Company, and Chrysler Corporation should recover costs in circuit court against plaintiff.