HELEN M. GEISENHOFF v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.[1]

January 17, 1941.

No. 32,511.

[1]Reported in 296 N. W. 4.

224

*Snyder, Gale & Richards,* for appellant.
*Doherty, Rumble, Butler, Sullivan & Mitchell,* for respondent.

HOLT, JUSTICE.

Plaintiff's husband, John Henry Geisenhoff, was in the employ of the Railway Express Agency, Incorporated, when defendant issued its Group Life Policy of Insurance No. 1112-G, effective February 1, 1937, insuring, among others, the life of plaintiff's husband in the sum of $1,000, payable to plaintiff upon his death. Hereinafter the insurer will be referred to as the defendant, the Railway Express Agency as the company, and John H. Geisenhoff as the insured. The company employs some 12,000 persons covered by the policy. It pays the premiums monthly in advance to defendant, and deducts from the active employes' pay roll a certain portion each month. It does not directly appear how much of the premium is paid by the company and how much by the employes. If the insured is on leave of absence or totally disabled so as not to appear on the monthly pay roll, the company collects direct from the insured his contribution. The insured had been

employed by the company for over 32 years when this group policy No. 1112-G took effect February 1, 1937, and was on said date in active service. On March 6, 1937, he became totally disabled from disease and so continued until his death December 5, 1937. Defendant issued its certificate No. 6267 to the insured, stating certain conditions or terms of the group policy and that John Henry Geisenhoff's life was insured in the sum of $1,000 for the benefit of plaintiff. The insured on May 28, by check of $7.90, paid his part of the premium for the month of June, 1937, to the company. A letter dated June 23, 1937, from the company's superintendent to the insured is in the record. It reads:

"I am sending you herewith draft No. 3068 in the amount of $36.66 with which payment, 91 days' benefits have been paid to you, and is the maximum under the coverage. Notice of cancellation has been forwarded to the Group Insurance Bureau cancelling the coverage as of June 4, 1937. Within a few days I will send you the unearned premium which was paid in full by you for the month of June. I believe that you understand that cancellation of the coverage does not prejudice the rights of the beneficiary under the Extended Death Benefit provision of the life insurance, which will remain in effect approximately one year."

June 29, 1937, the company mailed the insured a check for $3.03, which was paid upon his endorsement. This is admitted to include the refund of the insured's payment of his part of the premium accruing after June 5. It also appears that the insured surrendered or parted with certificate No. 6267. The policy No. 1112-G provides that the company's application and the insured's application, together with the policy, shall constitute the entire contract. In the policy is also this statement, not found in the certificate: "Such certificate shall not constitute a part of this policy."

The provisions of the policy here important are these:

"Discontinuance of Individual Insurance. The insurance of an employee shall automatically cease at the end of the month in

which he fails to make the required contribution for his insurance to the Employer, or thirty-one days after the date on which his employment with the Employer shall terminate, or upon attainment of age seventy; provided, that in case the Employer does not notify the Company [defendant] to discontinue the coverage, leave of absence, temporary lay-off, retirement by the Employer, or absence due to disability shall not be considered termination of employment until such notice is given by the Employer to the Company; and further provided that if proof is furnished that such employee terminated employment with the Employer on account of total disability from bodily injuries or disease which prevented the employee from engaging in any business or occupation and from performing any work for compensation or profit; that such disability was continuous until the death of the employee; that such death occurred before the employee attained age 65 and while this policy is in full force and effect and within a period dating from such termination of employment not longer than the time such employee's insurance had been in force at the date of such termination of employment, but in no event longer than twelve months; then the amount of insurance on the life of such employee at the date of termination of employment shall be paid to the beneficiary, * * *

"In the event of termination of employment of any employee insured hereunder for any reason whatsoever, the employee shall be entitled to have issued to him by the Company without evidence of insurability, and upon application made to the Company within thirty-one days after termination of employment as defined herein, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount not greater than the amount of his insurance under this policy at the time of such termination; insurance under the converted policy to be in force and effective upon delivery of the policy and payment of the premium, but in no event prior to

the discontinuance under this policy of the insurance of the employee so applying. The Company shall, upon the discontinuance of the insurance hereunder on any employee because of termination of employment be released from all liability on account of such employee unless and until such an individual policy is issued, except as provided hereunder under the heading 'Discontinuance of Individual Insurance.' "

It should also be noted that the Company carried a health and accident group insurance policy in the Aetna for the benefit of its employes; also that the reference in the letter of June 23, above set out, relates to the pension established under 45 USCA, § 228b(a) and (c). Under date of July 21, 1937, the company sent the insured this letter:

"In accordance with the advice of your physician that you make application for retirement account physical disability to take effect on or about May 20th, this is to advise you that in accordance with physician's statement it precludes the possibility of your returning to the service. For the information of the Railroad Retirement Board, our records show your services to have been terminated as of May 20, 1937, and that you will not be returned to the service unless prior approval is given by the Railroad Retirement Board."

When the evidence was in, showing the facts recited, each party moved for a directed verdict. The court denied the motion of defendant, but granted plaintiff's. Defendant thereafter moved for judgment notwithstanding the verdict. It was denied and defendant appeals from the judgment.

The trial court took the view that according to the terms of the policy, above quoted, the insured had the right upon the termination of his employment to an extended term of insurance; that there was no such termination by the company until its letter of July 21, so informing the insured, reached him; that hence, from February 1, 1937, to July 22, when the letter presumably was received, the policy had been in full force for 171 days, and con-

sequently, continuing as extended insurance in force 171 days thereafter, it covered the date of the death of the insured; and that the company was not acting as agent of the insured in sending the letter of June 22, 1937, to the Group Insurance Bureau of New York, authorizing it to cancel the insured's insurance as of June 5. On the other hand, the defendant contends that when the insured accepted the $3.03 check of his portion of the June premium returned and never offered to pay his part of the July premium and surrendered his certificate, his insurance ended pursuant to this provision of the policy: "The insurance of an employee shall automatically cease at the end of the month in which he fails to make the required contribution for his insurance to the Employer," etc. There is force in that contention in view of the company's letter of June 23 to the insured, above quoted. However, that letter is equivocal and erroneously suggests the continuance of the "Extended Death Benefit" provision for a year. It and the refund check of $3.03 are not explainable under the provision of the policy that the contribution of the insured to the monthly premium shall not exceed $.60 for $1,000 of insurance.

In view of the fact that the quoted provisions of the policy are so closely connected up with the status of the insured as an employe, that his application for insurance is part of the policy, that he has agreed that part of the premium the company pays defendant monthly in advance be taken out of his monthly pay, or that he pay it if not in active service, seems to us to make it incumbent upon the court to construe the policy so that, if the company undertakes to terminate the insured's employment, he should receive actual notice thereof so that he may avail himself of the provisions above mentioned which the policy assures to him. The following cases so hold, and the reasoning therein given is persuasive. Emerick v. Connecticut General L. Ins. Co. 120 Conn. 60, 179 A. 335, 105 A. L. R. 413; Leavens v. Metropolitan L. Ins. Co. 135 Me. 365, 197 A. 309; Ambrose v. Metropolitan L. Ins. Co. 18 N. J. Misc. 42, 10 A. (2d) 479; Equitable L. Assur. Society v.

Davis, 177 Okl. 196, 58 P. (2d) 542; Ozanich v. Metropolitan L. Ins. Co. 119 Pa. Super. 52, 180 A. 67, 576; Shanks v. Travelers' Ins. Co. (D. C.) 25 F. Supp. 740; Voris v. Aetna L. Ins. Co. (D. C.) 26 F. Supp. 722. Garnsky v. Metropolitan L. Ins. Co. 232 Wis. 474, 287 N. W. 731, 124 A. L. R. 1489, may have some bearing on account of the citation and discussion of group insurance policies—policies whose terms and provisions are peculiar and different. In Emerick v. Connecticut General L. Ins. Co. 120 Conn. 60, 68, 179 A. 338, 105 A. L. R. 413, the court, after discussing the provisions in respect to reinsurance if the employment was terminated for any reason whatever (essentially the same as in the case at bar) reached the conclusion that:

"There could be no termination of the employment under the policy without knowledge or notice of it to the employee. Until it was terminated the employer was obligated to pay the company [insurer] a premium based upon the continuance of the insurance. The employer could have put an end to its liability for that premium by terminating the employment to the knowledge of or with notice to the employee and informing the company that it had been terminated; but until it was so terminated the employer continued liable for the premium due on account of the insurance."

The court in Leavens v. Metropolitan L. Ins. Co. 135 Me. 365, 370, adopted the conclusion expressed by the Connecticut court. It appeals to us as just.

Defendant relies on Colter v. Travelers Ins. Co. 270 Mass. 424, 170 N. E. 407; Trucken v. Metropolitan L. Ins. Co. 303 Mass. 501, 22 N. E. (2d) 120; Klat v. Chrysler Corp. 285 Mich. 241, 280 N. W. 747; Hawthorne v. Metropolitan L. Ins. Co. 285 Mich. 329, 280 N. W. 777; Magee v. Equitable L. Assur. Society, 62 N. D. 614, 244 N. W. 518, 85 A. L. R. 1457; Thull v. Equitable L. Assur. Society, 40 Ohio App. 486, 178 N. E. 850. The provisions in the policies involved in the decisions referred to are not alike nor are they the same as in the case at bar. In some the employer pays the entire premium. In others, as here, the employe in his appli-

cation to the insurer stipulates that a certain amount may be deducted from his monthly pay and applied upon the premium. Of course, in all such insurance the employer as well as the employe has the right, at any time, to end the employment. When that occurs, the insurance ends and also the rights of the employe under the policy except as therein provided. In the case at bar the provision for extended insurance appears to be a right available to the employe as well as the one to apply for individual life insurance. The provision for extended insurance was the one deemed applicable by the trial court, and we think the ruling was right that the provision for extended life insurance took effect and commenced to run when the insured received the letter of July 21, 1937, notifying the insured of the fact that his employment with the company was ended.

The judgment is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

